## JOHNSON *v.* JENKINS.

In an action for breach of promise, evidence, drawn out by the plaintiff, of declarations by the defendant, tending to prove that his failure to marry the plaintiff proceeded from no want of respect or attachment to her, is proper for the consideration of the jury, in mitigation of damages. The defendant in such an action is entitled to prove the truth of such declarations, and to show that his mother, a woman in infirm health, was strenuously opposed to the match.

APPEAL from the Supreme Court. Action for breach of promise of marriage. The plaintiff had a verdict for five thousand dollars at the circuit, and the judgment was affirmed at the general term, in the third district. The defendant claimed a reversal, on the ground that two errors were committed by the judge at circuit, First, in permitting the following question to be put to a witness: How was Louisa (the plaintiff), affected by the discontinuance of the defendant's visits, and Secondly, in excluding the offer of the defendant to prove, in mitigation of damages, that the defendant's mother was strenuously opposed to the defendant's marriage with the plaintiff, and that she was in feeble health, and had been for

some time, being weak, nervous and subject to hysterical at-
tacks. The defendant was a young man, an only son, and
lived with his parents. It had been proved, that on one occa-
tion when asked the reason why he had discontinued his visits
to the plaintiff, he had declared that his affection and regard
for her were undiminished, but that he could not marry her
because his parents were so violently opposed to the match.
The defendant's counsel asked the court to charge that his
expression and conduct on this occasion, might be taken into
consideration by the jury to mitigate damages. The court
refused so to charge, and the defendant excepted.

*Amasa J. Parker*, for the appellant.

*John H. Reynolds*, for the respondent.

ALLEN, J. The learned justice charged the jury, that this
was one of a class of cases for which the law allowed what are
called aggravated damages, that is, damages beyond and in
no way measured by any proof of actual pecuniary loss or
injury. By this I understand, that the jury were told, that
in this class of actions, as in libel, slander, seduction, crim-
inal conversation, &c., they were at liberty to give what are
termed punitive damages, as distinguished from compensa-
tory damages, that is, damages by way of punishment to the
defendant, beyond what would fully compensate the plaintiff
for the loss occasioned by the wrongful act of the defendant.
This part of the charge thus understood, was in conformity
with the decisions of this court in *Keezeler* v. *Thompson*, referred
to, and reäffirmed in *Hunt* v. *Bennett* (19 N. Y., 173), and
therefore the exception to it must be overruled. Damages
in these actions, sometimes called vindictive, may be enhanced
by such facts and circumstances as aggravate the injury itself.
Circumstances under which an offence is committed, or a wrong
done, may increase the real injury by adding to the indignity
and contumely, increasing the mental agony, and bringing
public disgrace and consequent loss of reputation upon the

injured party.   Such acts may directly increase and aggravate
the positive injury sustained by the injured party, and may
very properly enhance the damages which a jury may award.
This action was tried upon the principles of the cases cited,
and the theory that the damages were not limited by the actual
loss or injury to the plaintiff, but were discretionary, that is,
that the jury, in their discretion, might in the assessment of
the damages, punish the defendant for the injury done.   Of
course this discretion was not understood by the court or jury
to be an arbitrary discretion, but a discretion to be exercised
in reference to the facts proved and the circumstances attending
the injury complained of.   If the abandonment of the plain-
tiff by the defendant, was wanton and ruthless, and so accom-
plished as to manifest an intent unnecessarily to wound her feel-
ings, injure her reputation, and destroy her future prospects,
all the circumstances showing the defendant to have been
influenced by bad motives, then the largest measure of dam-
ages, not only by way of compensation to the plaintiff but, under
the rule, by way of punishment to the defendant, were proper.
If, on the contrary, the breach of promise was occasioned by a
change of circumstances, which, without legally justifying, took
from the abandonment all its character of cruelty and wanton-
ness, and the defendant in withdrawing from his engagement,
was tender of the feelings and reputation of the plaintiff,
and so accomplished his purpose as to leave no stain upon her
reputation, and do the least injury to her feelings and future
prospects, it would be a case for compensatory damages merely.
And so the just measure of damages may be varied by every
shade and variety of circumstances between the two extremes,
and hence every circumstance which can characterize the trans-
action, or throw light upon the acts and the motives of the
actors is admissible in evidence.

It is not like an action upon a promissory note, where, the
breach of promise being proved, the damages are fixed and
certain, but the circumstances or the motives of the breach
affect the damages.   Every circumstance attending the break-
ing off of the engagement becomes a part of the *res gestæ*.

The reasons which were operative and influential with the defendant are material, so far as they can be ascertained; and whether they are such as, tending to show a willingness to trifle with the contract and with the rights of the plaintiff, should enhance the damages, or, on the contrary, showing a motive consistent with any just appreciation of and regard for his duties, should confine the damages within the limit of a just compensation, will always be for the jury to determine.

The cause was left to the jury, withdrawing from them all that the defendant had said in conversations elicited by the plaintiff, as to the reason for his refusal to keep his promise, as a wanton and unexplained breach of promise, and necessarily an aggravated breach of promise deserving punishment. Had the defendant, by his declarations, shown a wicked mind in the transaction, it is evident that they would very properly have been submitted to the jury further to enhance the damages. (2 Greenl. Ev., §§ 266, 267; Mayne on Dam., 282.) It would seem to follow, that, when the refusal, as proved by the plaintiff, is accompanied with remarks and declarations doing ample justice to the plaintiff, and taking from the act the sting and injury, so far as kind feelings and good motives can take from a wrong act its sting and lessen its capacity to injure, such declarations should be submitted to the jury in mitigation of damages. The judge erred, I think, in instructing the jury that, so far as such declarations had been proved, they were not at liberty to consider them, to lessen their verdict. But the defendant offered to prove that the declarations were true, to wit, that his mother was strenuously opposed to the marriage with the plaintiff, and that he yielded to this parental opposition. This was excluded; and in this, I think, the learned justice also erred. It certainly was no bar to the action, and did not tend to reduce the damages below that amount which would compensate her most fully for all the loss sustained by her in reputation, anticipated future settlement in life, and mental and bodily suffering; but it did tend to mitigate the damages, so far as they might be aggravated or punitive. Evidence of this character was admitted in *Irving*

v. *Greenwood* (1 C. & P., 350), and in *McKee* v. *Nelson* (4 Cow., 355); and no intimation is found anywhere that it was improperly admitted, although the case first mentioned is cited in 1 Parsons on Contracts, 553, and it is plainly to be inferred that the ruling of the circuit judge in *McKee* v. *Nelson* was fully approved by the Supreme Court. To say that the plaintiff may enhance or aggravate the damages by proof of the circumstances attending the commission of the wrong, and that the like circumstances may not be given on evidence in mitigation, or rather in the prevention of punitive damages, when the jury may, in their discretion, allow punitive damages for an unexplained injury of this character, is not only unjust, but unreasonable. The law does not so unreasonably deprive one party of the benefit of facts which it gives to the other.

The judgment must be reversed and a new trial granted; costs to abide the event.

SELDEN, Ch. J., DENIO, SUTHERLAND, and SMITH, Js., concurred.

DAVIES, J. (dissenting.) To arrive at a correct conclusion as to the propriety and correctness of the decisions at the circuit, it will be profitable to recur to the nature of the action, and the principles which regulate the recovery of damages therein. Although, technically, it is denominated an action for a breach of contract, the action being founded on a contract of marriage, yet it is, actually, given to afford an indemnity to the misused party for the temporal loss which the party has sustained in not having the contract fulfilled. And this has always been held to embrace the injury to the feelings and affections, wounded pride and the loss of marriage. (*Wells* v. *Padgett*, 8 Barb., 323.) It is a well-settled rule, that the damages in actions of contract are to be limited to the consequence of the breach of contract alone, and that no regard is to be had to the motives which induced the violation of the agreement. (Sedg. on Dam., 208.) To this general rule there is one exception. in the case of a breach of promise of marriage. In this

action, though in form *ex contractu*, yet, it being impossible, from the nature of the case, to fix any rule or measure of damages, the jury are allowed to take into their consideration all the circumstances, and, provided their conduct is not marked by prejudice, passion, or corruption, they are permitted to exercise an absolute discretion over the amount of compensation. (Sedg. on Dam., 210.)

In *Southard* v. *Rexford* (6 Cow., 254), WALWORTH, Circuit Judge, charged the jury " that, in cases of this kind, the damages are always in the discretion of the jury, and, in fixing the amount, they have a right to take into consideration the nature of the defence set up by the defendant ;" and this charge was held unexceptionable by the court, which adds, " that there can be no well-settled rule by which the damages in every case are to be regulated. They rest in the sound discretion of the jury, under the circumstances of each particular case."

The question admitted under objection is not obnoxious to the criticism, made by the defendant's counsel, that it calls for the opinion of the witness. The plaintiff being entitled to recover damages for the injury to her feelings, expectations and wounded pride, as well as those occasioned by loss of the marriage, it was clearly competent for her to show how her feelings, affections and pride were affected by the breach of contract on the part of the defendant. It would have been competent for him to have shown, in mitigation of damages, that she regarded and treated his abandonment of her with levity, and was wholly unaffected by it; that she immediately formed another marriage engagement; and that her conduct was otherwise objectionable. I see no objection, therefore, to the plaintiff showing how she was affected and acted on the occasion of the defendant's misconduct. It was not laying the ground for any specific recovery for damages on account of the effect upon her feelings, but as an element for the further consideration of the jury. It was only showing a fact which naturally and obviously resulted from a breach of such a contract, when there was affection and sincerity on the part of the

plaintiff. The testimony was, therefore, properly admitted. In *Johnson* v. *Caulkins* (1 John. C., 116), the Supreme Court of this State held that, with a view to the mitigation of damages in an action for breach of contract of marriage, it was competent for the defendant to show licentious conduct in the plaintiff, and her general character as to sobriety and virtue. In *Willard* v. *Stone* (7 Cow., 22), the Supreme Court held that evidence of the gross and indecent familiarity between the plaintiff and another person should have been received in mitigation of damages. The same rule was affirmed in *Palmer* v. *Andrews* (7 Wend., 142). It was the conduct of the plaintiff which it was held to be admissible in mitigation of damages. The rules governing this action are clearly laid down by SEDGWICK, J., in *Boynton* v. *Kellogg* (3 Mass., 189). They are, 1. That, if the plaintiff was of bad character at the time of the promise of marriage, and that was unknown to the defendant, the verdict ought to be in his favor; 2. If the plaintiff, after the promise, had prostituted her person to any other than the defendant, she clearly discharged the defendant; 3. That, if her conduct was improperly indelicate, although not criminal, before the promise, and it was unknown to the defendant, it ought to be considered in mitigation of damages; 4. That, if such was her conduct, after the promise, it was also proper for the consideration of the jury in mitigation of damages.

It will be observed that in all these cases the conduct of the plaintiff was admitted to mitigate the damages. And although it is true that the conduct of the defendant had been always admitted to aggravate the damages, it has never yet been allowed to mitigate or reduce them when the plaintiff would otherwise be entitled to recover. It is difficult to perceive on what principle such evidence is to be allowed. The conduct of the plaintiff in a case where the recovery for damages is allowable, may be availed of by the defendant to reduce or mitigate what the jury would otherwise be authorized to allow the plaintiff for the breach of contract on the part of the defendant. So, also, the improper conduct of the defendant, as

in seducing the plaintiff under promise of marriage, may be given in evidence to aggravate the damages. It is not seen upon what principle the conduct of the defendant, or of those connected with him, or the influences which they may exercise over him, can be imputed to the plaintiff so that the effect shall be to mitigate or reduce what she would otherwise be entitled to recover. If this be so, why should not the conduct and acts of the plaintiff and those connected with her be given in evidence to aggravate or enhance the damages which she would otherwise recover? No reason is perceived, why if the one state of facts is to be admitted to reduce the damages, why the other should not be to enhance them. It is the misconduct on the part of the plaintiff, in respect to the same transaction tending to diminish the degree of injury, which, on the whole, is fairly to be attributed to the defendant. (2 Greenl. Ev., § 267.) It is urged that the case of *Irving* v. *Greenwood* (1 Car. & P., 350), is an authority for the admission of the evidence embraced by the defendant's offer. That case is cited by Parsons (1 Pars. on Con., 553; Saund. Pl., 666; 1 Phil. Ev., 190, by Edwards), as authority for the position, that evidence that the parents of the defendant disapproved of the engagement has been received in mitigation of damages. The case is not very accurately reported, and a careful examination of it will show that the point ruled falls far short of the text above quoted. It was a case of breach of promise, and was tried at *Nisi Prius* before ABBOTT, Ch. J. It is stated that the defendant's counsel wished to show in mitigation of damages, that the father and other relatives of the defendant disapproved of the match. It is stated that ABBOTT, Ch. J., allowed evidence to be given of their disapproval and the reason they assigned for it, but in stating what actually occurred on the trial, it is said the Chief Justice allowed it to be proven, the father of the defendant being an incompetent witness, that he, the father, had expres⬛ to the defendant his dislike to the match on account of t⬛⬛d character of the plaintiff. That bad character consisted in the fact that she had had a child by, as it was alleged, another man.

Now it is seen that the only point ruled was, that the defendant might in mitigation of damages give in evidence the opposition of the fatner to the match, when he assigned as a reason for such opposition the bad character of the plaintiff. This case stands solitary and alone in the books as an authority, that the damages may be mitigated otherwise than by the conduct of the plaintiff. In *McKee* v. *Nelson* (4 Cow., 355), EDWARDS, J., at the circuit, allowed the father of the defendant to prove that he and the mother of the defendant remonstrated with him against his marrying the plaintiff But the verdict having been for the plaintiff, the court did not pass on the objection taken by the plaintiff's counsel to the introduction of this testimony. It must be conceded that neither of these cases come up to the propositions of the defendant in this case. The offer in this case was to show that the defendant's mother was strenuously opposed to the defendant's marriage with the plaintiff. That she was in feeble health at that time, and had been for a long time. The plaintiff objected to the proof so offered, and it was excluded and the defendant excepted. The exception taken is to the exclusion of the whole proof so offered, and if any part was improper and illegal, the objection was properly sustained. It is not now contended that the state of the health of the defendant's mother could properly be shown in mitigation of the plaintiff's damages. It was therefore properly excluded, and the exception being to the exclusion of the whole offer, if any part was illegal and improper, the exception fails. But I prefer to put my opinion on the broader ground that the whole evidence was inadmissible. It never can be that the acts and conduct of third parties, produced it may be by the representations of the defendant, to enable him, more easily and with less hazard, to break his contract, can have any just or legitimate influence in reducing the damages which the plaintiff would otherwise entitled to recover. It is the conduct of the parties to the record which is the subject of investigation, and the plaintiff can never be prejudiced by the acts and conduct of others with whom she has had no connection, and

which was not influenced by anything which she had done. The sanction of such a rule would, in my judgment, be an intimation to parties that they might violate their contract almost with impunity.

The judgment should be affirmed.

WRIGHT and GOULD, Js., were also for affirmance.

Judgment reversed and new trial ordered.