The opinion of the court was delivered by
Nicholls, C. J.
Plaintiff’s petition is to the effect that his occupation is that of a clerk and solicitor, in which he has been engaged for years and entirely dependent thereon for his living, and that in the said pursuit he always had the esteem and good will of his fellow-citizens. That petitioner was in the employ of defendants and served them honestly and faithfully as a solicitor, and that about the 16th September, 1891, he was discharged by them, giving as the reason for the discharge that he was not as successful in soliciting business as they had anticipated, and for this reason only they would require his services no longer. That subsequently he was employed as a clerk in the office of the Cromwell Line Steamship Company and remained in its employ for some time in New Orleans and again returned to the business of soliciting for the house of Richard M. Ong, dealer in paints, oils, etc., and doing identically the same business and dealing in the same merchandise as defendants. That petitioner was doing a successful business for the said R. M. Ong. That the house of R. M. Ong was in opposition to James G. Clark & Co., the defendants. That petitioner suddenly ceased securing orders and that his customers refused to patronize him and refused to have any business relations with him whatever, and he was notified by them and verily believes and charges as the reason of said refusal (and for no other reason than that), that his said customers did receive from James G. Clark & Co. a circular letter prepared and published by said James G. Clark & Co. in the following language, to-wit:
Jambs G. Clark & Co.,
Warehouses 203, 205, 207 Magazine street, 17, 19, 21, Natchez street.
Storage Yard, Erato near Magazine street.
Oils, Sugar House Supplies, Naval Stores, Building Materials, Painters’ Supplies.
Office 62 Magazine street,
City. New Orleans, October 17, 1891.
Gentlemen — Mr. Harry J. Warner, formerly in our employ, is no longer so.
*865 Our friends and customers will kindly note the above and give Mr. Warner no recognition on our account.
Thankful for all past-favors we ask at your hands a further continuance of same.
We remain yours very truly,
(Signed) Jambs G. Olark & Oo.
J. G. O.
By the above letter meaning to imply and imp ying and meaning to insinuate and insinuating that petitioner was dishonest and unreliable and otherwise casting reflection on the integrity of petitioner and intending to injure petitioner in his good name, fame and credit, and to bring him into public scandal and contempt.
Petitioner further averred that James G. Olark or some member of_ the said firm maliciously and falsely and without cause libeled and slandered petitioner in said letter, and its meaning therein conveyed, and he specially charged that said letter was written and delivered to petitioner’s customers and to no other persons except those whose business was solicited for orders in the line of goods which petitioner’s house, R. M. Ong, and also James G. Olark & Oo., dealt in.
That it was written maliciously and without any probable cause for the express purpose of injuring petitioner in the estimation of his customers, and to completely ruin and destroy the confidence of the public in petitioner, which purpose has been accomplished by said letter and false and malicious accusations and insinuations.
Petitioner further represented that his character has always been of the best and his integrity unquestioned; that he has always conducted himself in an honest and straightforward manner in all business transactions, and has always earned a living in the community and city where he has lived, and that now he is unable to get employment at his business or any other business of responsibility on account of said malicious libel and misrepresentation by said James G. Olark & Oo. That he has been grievously injured in character and reputation and financial and business relations to the amount of f 10,000.
All of which acts of said James G. Olark & Oo. were done with malice aforethought and malicious intent to injure petitioner and to secure for themselves any trade which petitioner might divert as *866 solicitor for the house of Richard M. Ong. Petitioner prayed for judgment for damages agaihst 'defbhdants' for $10,000 and for trial by jury.
Defendants filed (1) an exception that “ the petition disclosed no cause of action against defendants or either of them. That the letter complained of does not libel or slander petitioner,” and (2) an exception that “said petition was too vague and indefinite to enable them to safely answer thereto.”
“ It does not set forth what customers or who refused to patronize petitioner and refused to have any business relations with him, nor when or at what dates, nor does it show or set forth of what items his claim for $10,0C0 is composed, or what, if any, actual loss he haf> sustained, and they prayed that the petition be dismissed.”
The court overruled the first exception but partially sustained the second, “ requiring plaintiff to amend and state the names of the customers of plaintiff who refused to patronize plaintiff or to have business relations with him, and where and at what dates, on account of said letter.”
Plaintiff under this ruling filed a supplemental petition in which he averred that he had immediately after the publication of said libel had a great falling off in his business, and had reason to believe and alleged that said falling off was due to said malicious and libelous publication of defendants as set out in the original petition.
That he can not say with exactness which of his customers refused him business on account of said libel, but he appended and made part of his amended petition a list of such of his customers who formerly dealt with him and who have ceased to give him orders of any magnitude since its publication, and who with others (whom petitioner does not now remember), as petitioner believes and charges, have been influenced by the said malicious and wrongful act of defendants. That by reason of said libel he has been unable to get a salary of $76 a month, promised him by Richard M. Ong, provided he should do a successful business, besides losing large receipts for commissions. That petitioner estimates his financial damages at $1000, and the damages to his injured feelings and his character and reputation $9000.
To this petition was appended a list containing the names of a number of business firms.
*867 Defendants pleaded the general issue. They admitted that their firm wrote and sent to some of their customers the letter referred to in plaintiff’s petition, but averred that said letter did not contain and was not intended as a libel or slander upon plaintiff. That all the •statements made in said letter are true and that they were justified in writing and issuing the same. That after his discharge by defendants, and before the writing and issuance of said letter, said Warner frequently called at defendants’ place of business, and saying that he was expecting letters containing orders for defendants which he wished to turn over to them; he was admitted into their private office; and there obtained information as to their business. That no letters containing orders for defendants ever came to their office for said Warner, or if they did, he did not turn the orders over to them. Defendants subsequently learned that at the time of his visit to their private office said Warner was soliciting business for Richard M. Ong of this city, a rival of theirs, and thereupon they charged him with being in saidOng’s employ, which he at first denied but (upon being pressed), admitted to be true. That after having obtained information as to defendants’ business, by access to their private office, said Warner called upon customers of defendants whom they were about to supply with goods, or with whom they were negotiating for the sale of goods, and endeavored to prevent the sale of defendants’ goods, and to effect a sale of said Ong’s goods, to said customers.
That they would not have permitted said Warner to enter their private office and obtain information as to their business if they had known that he was soliciting business for said Ong.
That while in their employ said Warner attempted to borrow a sum of money from Mr. Robert Beltrain upon his statement to him that he, said Warner, had on deposit with defendants, or that defendants owed him, the sum of $90; that at that time said Warner had no sum on deposit with defendants, nor did they owe him any sum whatever; that'they issued said circular letter because they believed it necessary for their protection by reason of the above mentioned facts and other acts of said Warner, and they were actuated by no other motive or purpose.
On the trial of the case the jury rendered a unanimous verdict in favor of plaintiff for the sum of $8000.
Defendants moved for a new trial on the grounds that:
*868 1. The court erred in permitting plaintiff to offer before the jury testimony tending to show that the letter written by defendants was discussed by other persons than those to whom defendants sent it, and upon information not derived from defendants.
2. Because the court erred in permitting plaintiff to offer evidence before the jury tending to show merely the impressions or. conclusions of third persons, ánd to prove the innuendoes charged by plaintiff, when the letter complained of is in plain, unambiguous terms. ,
3. Because the jury disregarded the law requiring express malice to be proved in eases of privileged communications, such as the letter complained of in this case, and no malice having been proved, defendants were and are entitled to have plaintiff’s suit dismissed.
4. Because the jury was prejudiced against defendants by efforts made by plaintiff’s attorneys to introduce matters which were held by the court to be entirely irrelevant and improper.
5. Because the jury was prejudiced against defendants by an improper inspection during the trial of documents constituting only a portion of the evidence in the case.
6. Because no actual damage was proved and no evidence offered by him upon which it is possible to estimate any damage, as is attempted to be done by the verdict.
7. Because the verdict is contrary to the law and the evidence.
The court overruled this motion and rendered judgment in favor of plaintiff against defendants for $3000 in conformity with the verdict of the jury. The defendants have appealed.
The first contention of the defendants in this court is that there was error to their prejudice in not maintaining their exception of no cause of action. They say “ there is nothing of a libelous nature in the letter, nothing from which it could be reasonably inferred that Mr. Warner had been discharged for dishonesty as charged in the innuendo — that the language used was not capable of such meaning.” In support of their position they quote Mulligan vs. Oole et al., L. R. 10, Q. B. 549; Newell on Defamation, pp. 287-8, Sec. 25; Dunsee vs. Norden, 36 An. 79.
Article 2315 of our Civil Code declares that “ every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”
*869 In Spotorno vs. Fouricbon, 40 An. 424, we said: “ Our courts are not bound by the technical distinctions of the common law as to words actionable per se and not actionable per se and allowing for the latter only actual pecuniary damage specially proved. Miller vs. Holstein, 16 La. 389; Feraz vs. Foote, 12 An. 894.
“If the charges are false, injurious, and made maliciously or malo animo, they combine all the elements essential to support the action.” These remarks apply fully to the case at bar. Plaintiff’s allegations cover each of these essential requirements, and if proved would certainly entitle him to a judgment for damages for some amount. The case of Dunsee vs. Norden referred to was not decided on an exception of no cause of action, but after a trial on the merits and evidence heard.
We think the ruling of the court on the exception was correct.
Defendants, denying that the language of b'he letter was “ capable of the meaning charged in the innuendo,” complain that the court permitted witnesses to testify as to the impression made upon them by reading the letter — to their understanding of its meaning and to their proving it had the meaning plaintiff attributed to it. When plaintiff’s counsel asked of the first /witness whom he placed on the stand and examined “what impression the letter conveyed to his mind,” we find a statement made in the note of evidence that “defendants’ counsel objected,” but neither the grounds of objection, the ruling of the court nor its reasons are stated — nor is there any mention of an exception having been taken or any bill reserved. The action of the court seems to have been first specially objected to on an application for a new trial. We take occasion bo say that the law authorizing a note of objections to be substituted in lieu of a bill, never contemplated doing away with the recitals which we have always held necessary to a proper bill of exceptions, and farther to say that it is essential that the court should be fully advised of everything requisite to enable it to act advisedly upon all proceedings and rulings in the lower court.
In the reasons assigned by the district judge for overruling the motion for a new trial he thus alludes to defendants’ objections on this particular point:
“The second ground of defendants’ motion is that witnesses were permitted to tell their impressions produced by the letter and to prove the innuendo charged.
*870 “ In no instance was any witness permitted to explain the meaning of the letter or to prove the innuendo alleged by plaintiff, so far-as I can find. Testimony was received to show injury to plaintiff’s, name and reputation by reason of or as the result of the letter, and the comments it set in motion, and thereby to prove actual damage as alleged and general damage as alleged. The assumption of facts, having this ground is not well founded. Every ruling that I made was based on the view that having alleged actual and general damages plaintiff should be permitted to prove that the effect of the letter on the minds of those who saw or heard of it was to injure hiS' character and to excite suspicions of wrong-doing. How else could he prove this than by hearing what effect or result the letter produced on the minds of third persons I can not conceive. Such-evidence was not offered to explain the letter or to prove the innuendo.”
The reasons assigned by the judge fully justify, we think, his ruling on this particular point.
Later on in the trial, another witness being on the stand, he was-asked by plaintiff, “ What was the impression received by you from, what you heard 7 ’ ’
To this question defendant objected “because the letter complained of, being a privileged eommuniaation and not having been circulated or published by the defendants, they are not responsible for-the publication or circulation made by others not authorized or intended by themselves.” Following this entry on the note of evidence we find the words, “Objection overruled, bill reserved.” We find no bill in the transcript. Before considering the objection we wish, to direct the attention of the district judges to the necessity of their-supervising the objections as stated in the note of evidence and to the reasons for their rulings being simultaneously noted, so as to-bring matters to the situation they would have been had the statute we have referred to not been passed — modified, of course, to the-extent of doing away with mere formal and non-essential particulars.
We come to a knowledge of the reasons for the judge’s action by the statement already given as to his rulings on objections to testimony. That statement covers the complaint we are now considering, as well as that we have just mentioned. We think the judge decided correctly; plaintiff, having proved that his name and reputation were being injuriously criticised, had the right to trace this fact,, as a fact, to its cause; and, if he could, to the circular letter. Hav *871 ing alleged that by and through the act and fault of the defendants in writing and delivering this letter he had suffered general and special injury, he was entitled to prove that allegation as a fact independently of the particular persons who, having received the letter, may have spoken of the same and its contents and thereby increased the circulation of the statements therein. The question is, did the act of the defendants in writing and sending out this circular h ve, as its general effect, to injure the plaintiff. The testimony objected to legally tended to prove that fact in our opinion, and was admissible. It may be well to say in this connection that we do not regard the circular letter sent out by the defendants as a privileged communication.
The evidence shows that the plaintiff, who had been several months in defendants’ employ, was discharged by them on the 30th September, 1891, and that the separation took place without friction.
Amicable and cordial relations continued to exist between the parties, so much so that the plaintiff, (who on leaving the defendants had gone into the employ of the Cromwell Line of steamers), was in the habit of stopping at the defendants’ store and with defendants’ consent making himself, it would seem, very much at home. Suddenly he was informed by the junior partner that his presence was offensive to them and that they did not wish him to return. This notification was followed up by the writing and sending out of the circular letter which has given rise to this litigation. We are relieved from any great trouble in ascertaining the cause and motive of this act by the testimony of the two partners given on the trial. This testimony causes us to eliminate in that connection from the case that portion of the answer which refers to certain small purchases made by the plaintiff at another store and his attempted loan of money from a friend of his. We are satisfied the first matter was known at the time and not considered at all reprehensible, and that knowledge of the second did not reach them until after they had taken the step they did and had no bearing on the case.
In Alba vs. Moriarty, 36 An. 681, a case where the plaintiff was suing his employer for his salary for having prematurely discharged him without cause, the court in speaking of the discharge said: “ It is also shown by Moriarty’s own testimony that at the time he dismissed the plaintiff he had not been informed about the alleged *872 irregularities charged, in the answer, and, therefore, they could not have entered into the reasons for his discharge — they were really an afterthought andean evident pretext.”
These words are applicable to the case at bar.
The real ground upon which the defendants acted, and on the suf•ficiency and correctness of which this case will have to turn as justifying their course, was that they had reached the conclusion that the plaintiff (as the senior partner said), “ had been dealing falsely with them — not doing the square thing; that Mr. Warner was going to their office regularly, and at the same time he was going there he was in the service of R. M. Ong & Co.” (a retail house) — “ that is, a portion of the time ’ ’ — and because (as the junior partner said) “ they were very indignant because the5r thought he (plaintiff) was playing the dirtiest and shabbiest trick a man could play — representing another firm and still going to their office.”
We must inquire whether the plaintiff was in point of fact guilty of any double dealing with the defendants, and if he was so guilty, whether defendants were justified in resorting to the action they did as a corrective.
We may say at once that there is no evidence that the plaintiff either obtained any advantages by his visits to the defendants’ store, or if he did that he ever utilized them — there is not a scintilla of testimony going to show that he ever represented to any one after his discharge from defendants’ service that he was still continuing therein, or that in soliciting for orders he concealed the fact that he was doing so for the house of Ong & Co. It would have been an act of folly for him to have attempted to do so, for the deception or misrepresentation would have inevitably been discovered at once. If the plaintiff was guilty of any wrong it would have been at worst of continuing to visit in a friendly, intimate manner at defendants’ store, when at the time of doing so he was in the employ of a rival establishment.
When the defendants (as they had a right to do) discharged the plaintiff their business relations were completely severed and the latter was at liberty to seek employment elsewhere, and obtain it wherever he could. The fact of his prior service with the defendants in no manner interfered with his seeking service with a rival establishment, and if employed by a rival house he was fully authorized in doing his utmost for it (as unquestionably it was his duty to have *873 done prior to discharge for the defendants), even though in doing so he might work to the prejudice of his former employers — provided, of course, in so doing he was guilty of no misrepresentations or legal' wrong-doing. We know of nothing which would cut the plaintiff off from his absolute right of soliciting any one he might choose to solicit for orders, among others the customers of the house with which he had been connected and with whom he may have become acquainted through such connection.
We know of no reason why friendly relations should cease to exist between a commercial firm and one of its former employés, ipso facto by his going into the service of another house in the same branch of business. We see no good reason why Mr. Ong, himself, the head of the other house, could not with full propriety have visited defendants precisely on the same footing that plaintiff did. If the action of either the one or the other in doing so were to meet with the disapproval of the defendants it would be a pure matter of feeling and taste and not of right or wrong. As a matter of fact, however, it is exceedingly questionable whether the plaintiff, after he became employed by Ong & Co., ever went to defendants’ store more than on one occasion. Whether he would have done so or not had not the defendants objected, is pure speculation. Plaintiff’s visits to defendants’ store seem to have been when he was employed with the Cromwell Line of steamers. Assuming, however, that plaintiff was employed by Ong & Co. when so visiting the defendants’ store, and was at that time soliciting for Ong & Co., and defendants should have thought such conduct reprehensible and inconsistent with their ideas of propriety and fair or square dealing, their plain, obvious remedy was the very one which they at first adopted of requesting a discontinuance of such visits — a remedy which proved fully efficacious. We think the defendants were entirely unjustifiable in following up this action of theirs by sending out the circular letter which they did. There was no legal relation or connection between the conduct complained of and this letter which defendants circulated. Plaintiff had not sought to utilize in any improper way his connection with them, and there was no reason when they distributed the letter, for them to apprehend that he would do so. The defendants were, as they say, “indignant,” and the letter was obviously sent in anger and intended as a punishment and to injure plaintiff, and not as a protection either to their customers or to themselves. They say themselves that as a *874 solicitor he was a failure; they assign this as a reason for discharging him, and if this was true they had no reason to fear that he would (even had he resorted to illegitimate means — which he did not — ) have diverted any large amount of trade from them. We see no ground for any claim that this circular letter was a privileged communication. Written and sent to every one whose name happened to be on the address book in their store, they were bound to suppose that the parties to whom it was addressed, or, at all events, a large part of them, would not consider it in that light and would naturally speak of its contents to others and those contents would be publicly discussed.
The whole matter was referred to a jury, they heard the evidence and saw the witnesses, and after full hearing they have found by returning a verdict in favor of the plaintiff that the allegations of his petition are true and his prayer just and well founded. The district judge on application for a new trial gave his views on the questions here raised, and (save as to the amount of the damages found) he concurs in opinion with the conclusions reached by the jury. On this last point, though refusing to set aside the verdict, he obviously was of opinion that it was for too large an amount.
In the case of Spotorno vs. Fouriehon, already mentioned, this court said: “ Both the damage or injury and the malice may be inferred from the nature and falsity of the words and from the circumstances under which they were uttered, without the necessity of special proof.”
In the case at bar we are perfectly satisfied that the plaintiff has been injured and damaged, but it certainly can not be said that he has proved the amount with certainty. Plaintiff had been pretty generally employed for the last eleven or twelve years at a salary or on commissions which brought him from $30 to $75 a month; he was in defendants’ employ at $60 a month, but before this difficulty arose they had reached the conclusion that his services in their line as solicitor was not worth that much. He was paid $75 a month by the Cromwell Line, but after a week’s employment he voluntarily left them to take service with R. M. Ong & Co., who were to pay him at the rate of $60 a month should he establish to their satisfaction after a trial (at first on commissions), that he would make a successful solicitor. This he was unable to do for the assigned reason *875 that defendants’ circular letter had caused him to be thrown under a cloud which forced him to leave his home and seek service at St. Louis, at which place at the time his testimony was taken in the lower court (June 15, 1892) he was about obtaining employment. From the date of the letter he does not appear to have been employed elsewhere than at Ong’s as a solicitor, where his commissions for seven months were almost nominal — $75 or $100.
In the very nature of things it would be impossible for a solicitor to establish to what precise extent a failure to obtain orders would be attributable to the circulation of a letter of a character injurious to him. That kind of business is to a very great degree dependent upon the favor of the solictor in the community in which he lives and his good name and credit, and these are not readily measured; indeed, it has been frequently decided that extent of damage to credit is an inferential fact which can be arrived at only by an examination — a weighing of all the facts and circumstances — and can not be the subject of direct proof. Trammel vs. Ramage, 93 Ala.
For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the lower court be and the same is hereby amended so as to reduce the judgment of the plaintiff against the defendants from $3000 to $600, and as so amended the said judgment is hereby affirmed, costs of appeal to be paid by the plaintiff and appellee, those of the lower court by the defendant and appellant.