## WILLIAMS v. BLACK.

A demurrer to an answer must be overruled if it states a good defense either complete or partial.

The private business affairs of a citizen, occupying no public position and not a candidate for public office, are not a matter in which the public has any special interest within the rule of privileged communications.

Though a newspaper publisher may print an impartial report of judicial proceedings in court, mere private investigations by officers or public authorities confers no more right upon him than upon a private individual.

Newspapers have no greater privilege to comment upon the conduct of a private citizen than has a private individual.

An answer in libel alleging that the publication was without malice, and not made with intent to injure plaintiff, but to discharge what defendant newspaper publisher believed to be his duty to the public, and that an investigation was had in which witnesses were examined, and that defendant prior to the publication had heard and

read the evidence of one of them, and that therefrom, with other knowledge he possessed, he was led to publish the article, states facts sufficient to show mitigating circumstances that might prevent exemplary damages.

A demurrer including not only the failure of an answer in libel to state sufficient facts to show justification or a privileged communication, but also mitigating circumstances tending to prevent exemplary damages, must be overruled if facts showing mitigating circumstances are alleged, irrespective of whether either justification or a privileged communication is shown.

(Opinion filed, Jan. 12, 1910.)

Appeal from Circuit Court, Day County. Hon. J. H. McCoy, Judge.

Action by David Williams against Charles F. Black. From an order sustaining a demurrer to the amended answer, defendant appeals. Reversed.

*Anderson* & *Waddel*, for appellant. *Sears* & *Potter,* for respondent.

CORSON, J. This is an action for libel, and it is alleged in the complaint: "That on the 6th day of February, 1908, the defendant was the editor, publisher, and properietor of the Waubay Clipper, a weekly ·newspaper published at Waubay in said Day county, S. D. That on the 6th day of February, 1908, the defendant maliciously composed and published concerning the plaintiff, in said newspaper, the following false and defamatory words, to wit: 'Will the farmers of Day county vote to retain in power a man who entered a· combination to kill competition of the lumber business in Webster? That was the object of the Williams lumber trust of Webster, which the state government is now investigating. They have levied tribute on every board you buy. If there is a man who thinks of voting for the rotten machine of which Dave Williams is head engineer, let him reflect. Let him reflect. Do the citizens of Day county like the idea of the man who is one of the chief figures in the lumber trust being the political leader in Day county? That is what the evidence of Mr. Ebert in the lumber investigation conclusively showed. What a spectacle for gods and men.' That said words and statements were false, malicious, and defamatory; that the said defendant by

the use and publication of said words and language used and published by the defendant as aforesaid, intended to charge and assert, and to be understood as charging and asserting, that this plaintiff had corruptly and unlawfully entered into a combination to fix prices of lumber sold at retail in the city of Webster, Day county, S. D.; and that a combination, agreement, or trust had been made, entered into or formed between other persons, co-partnerships or corporations and this plaintiff as an individual and as an officer of the Williams Brothers Lumber Company, to prevent full and fair competition in the sale of lumber and building material in the city of Webster, Day county, S. D., and other places in which this plaintiff was concerned in the sale of lumber and building material at retail. That several hundred copies of said newspaper so published by the defendant were placed in the United States mail at Waubay, S. D., for distribution to the subscribers of said paper, and were distributed through the post office at Waubay and through various other post offices including the post office in the city of Webster, to a large number of persons, for the purpose of being read by them. That by means of said publication the plaintiff was injured in his reputation, character, and in his good name, credit, and standing, to his damage in the sum of ten thousand dollars ($10,000)."

To this complaint the defendant filed an answer, the material parts of which are as follows: "Defendant admits that plaintiff is a resident of Day county, S. D.; admits that he is in the banking business and that he is president of the Farmers' & Merchants' National Bank, and that he is or was president of the Williams Brothers Lumber Company. Defendant further admits that on February 6, 1908, he was the publisher of the Waubay Clipper, published at Waubay, S. D., and further admits that on said 6th day of February there was published in said newspaper the articles set forth in paragraph 3 of plaintiff's complaint, but defendant alleges in reference thereto that said articles were not published together in said paper nor one immediately after the other, but that they appeared in separate and distinct portions of said paper. Defendant specifically denies that the said articles, or either of them, were false or malicious,

but alleges in reference thereto that the same were, and each of them was, without malice and in substance and effect true. That within the years 1905, 1906, and 1907 in the city of Webster, S. D., a combination, agreement, or trust was formed or entered into and maintained by which prices on lumber sold at retail in the city were fixed and determined; that this combination or lumber trust was entered into for the purpose of killing competition in the lumber business in the city of Webster and vicinity; that the Williams Brothers Lumber Company was a party to this combination or trust, and that the plaintiff herein, as president of the Williams Brothers Lumber Comaany, participated and took part in the organization and maintenance of the said · combination or trust; that he entered this combination for the purpose of fixing and determining prices at which lumber should be sold at retail in Webster and vicinity. Defendant admits that at the time of the publication of said articles, as aforesaid, the said Waubay Clipper had a circulation of several hundred copies in Day county. Defendant specifically denies that by reason of the publication of said articles plaintiff herein has been damaged in the sum of $10,000, or in any other sum whatsoever. Further answering the pretended cause of action set up in plaintiff's complaint, the defendant alleges that, prior to the publication of the articles therein complained of, and for years theretofore, the plaintiff had been and that he now is the known and acknowledged political leader or boss of that wing of the Republican Party known and designated as the "Stalwart" or "Machine" faction; that he was at the time of the publication of the articles referred to attempting to organize and control the said political faction of Webster and Day counties; that prior to the publication of said articles and in the month of December, 1907, there was instituted before August Hovland, a justice of the peace in and for Day county, S. D., by the Assistant Attorney General of the state of South Dakota, a proceeding under chapter 200 of the Laws of 1907 for the purpose of investigating the question as to whether or not certain lumber companies in the city of Webster, in said county, had entered into a combination and conspiracy for the purposes of fixing prices of lumber in said city and vicinity,

that at said investigation various witnesses were examined and among them one W. F. Ebert, whose testimony defendant had, prior to the publication of said articles, heard and read, and defendant says that the knowledge of said testimony together with other knowledge he possessed caused and prompted him to publish said articles. That defendant in his capacity as a newspaper man, published said articles only and solely for the purpose of apprising his subscribers of the facts in relation to the formation, control, and termination of the politics of said city of Webster and Day county. That defendant, in his capacity as a newspaper man, has always believed and does believe that it is his duty to his subscribers and to the public in general to lay before them the truth upon question in which the public as such has an interest. He believes it his duty as a neswpaper man to state the facts as they exist and to keep the people informed upon all public questions, even though the statements may be painful to the individual or individuals who are responsible for the acts concerning which such statements are made. Defendant states that he did not make the publications maliciously, or with the intention or for the purpose of injuring or harming plaintiff, but for the purpose of discharging what he believes to be his duty to the public. Defendant generally denies each and every allegation, matter, fact, and thing in said complaint contained, not hereinbefore specifically admitted or denied."

To this answer the plaintiff demurred on the ground: "That the facts stated in said answer are not sufficient to constitute a defense." The demurrer was sustained and, from the order sustaining the demurrer, the defendant has appealed, and it is assigned as error that the court erred in sustaining plaintiff's demurrer to the amended answer.

It is contended by the appellant that under the provisions of section 142 of the Code of Civil Procedure which provides: "The defendant may in his answer allege both the truth of the matter charged as defamatory and any mitigating circumstances, to reduce the amount of damages, and whether he prove justification or not, he may give in evidence the mitigating circumstances"; that the answer in this case must be held to be suffi-

cient and the demurrer should have been overruled, as it contains sufficient allegations of the truth of the matter charged; a sufficient statement of facts to show that the communication was a privileged communication, and mitigating circumstances sufficient to reduce the damage; and that in any event, if the answer is insufficient as constituting a justification, or the communication published is not a privileged communication, yet as the answer contains allegations of fact in mitigation of damages it was error to sustain the demurrer.

It is contended by the respondent, in support of the decision of the trial court in sustaining the demurrer, that the allegations of the answer are insufficient to constitute a justification on the part of the defendant; that the facts alleged in the answer failed to show that it was a privileged communication, and that there are no sufficient facts alleged to constitute mitigating circumstances. It is somewhat difficult to determine the precise nature of the answer, but we may presume that the pleader intended to set up justification of the alleged libelous article; that he intended to plead that the article published was a privileged communication, and that he intended to plead facts constituting mitigating circumstances for the purpose of reducing the damages. If the answer was not sufficiently definite and certain, the defendant should have been required, on motion, to so amend his answer and set out the defenses separately, in order that the plaintiff might be able to determine therefrom the precise nature of the defenses sought to be interposed by the defendant to the allegations of the complaint. As no such motion was made, however, and the plaintiff has demurred to the entire answer, the rule is well settled that if the answer contains a good defense to the action, either as a full defense or partial defense, the demurrer should have been overruled.

In 6 Ency. P. & P. 301, the rule is thus stated: "A demurrer which is too large—that is to say, which reaches the whole pleading—cannot be sustained if the pleading is good in part, and this rule applies alike to the declaration or complaint, and to all subsequent pleadings, and, if a declaration or complaint, though defective in part, contain one good count, a general demurrer to the

whole complaint will be overruled. Likewise, under the well-
recognized rules for construing pleadings, a demurrer will be
overruled if the declaration or complaint can be sustained in
either of two aspects which it may present; but if all the counts
are bad, such a demurrer may be sustained." And this seems to
be the general rule applicable to demurrers to pleadings as appears
from the numerous citations of authorities in support of the text of
the learned author. In view of the rule established relating to
demurrers it becomes necessary to examine the different defenses
attempted to be set up in the answer in the following order: (1)
Has a justification been sufficiently pleaded; (2) was the com-
munication privileged; (3) has the defendant pleaded sufficient
facts to constitute a partial defense in the way of mitigating
damages?

Section 770 of the Penal Code of this state defines a trust or
monopoly as a combination of capital or skill by two or more
persons to increase or reduce the price of commodities or to fix
any standard or figure whereby the price to the public shall be
in any manner established or controlled. And section 776 pro-
vides that any combination entered into between persons, co-
partnerships or corporations with intent to prevent fair and
full competition in the sale of an article of domestic use, and
which does in fact so tend or which tends to advance the price
to the user of any commodity of domestic use, beyond the reason-
able cost of production or manufacture thereof, or that tends
to advance the price to the purchaser of lumber imported into
this state, is declared to be against public policy and unlawful;
and any person who shall be a party to such unlawful combina-
tion is to be deemed guilty of felony.

It will be observed that the charge made in the alleged
libel clearly brings the respondent within the terms of these
sections, and unless the appellant is able to justify by allegations
and proof the existence of these facts, and that the circumstances
were such as to justify the publication of the same, his answer
must be deemed insufficient, and the demurrer was properly
sustained. Article 6, § 5, of the state Constitution provides that
in all trials for libel, both civil and criminal, the truth, when

published with good motives and for justifiable ends, shall be sufficient defense. In Newell on Libel and Slander, 651, the rule as to what shall constitute a sufficient answer is thus stated: "At common law the plea of justification must be pleaded with the greatest precision; it ought to state the charge with the same degree of certainty and precision as is required in an indictment. The object of the plea is to give the plaintiff, who is in truth an accused person, the means of knowing what are the matters alleged against him. It is said that he must know them already. It is true that he knows his own conduct, but he does not know what another means to impute against him. It is because the acts charged against the plaintiff are within the peculiar knowledge of the defendant, and he ought to specify them in his plea." On page 652 the author says: "A justification must always be specifically pleaded and with sufficient particularity to enable the plaintiff to know precisely what is the charge he will have to meet."

In 13 Ency. P. & P. 82, the rule is thus stated: "In pleading justification it will not be sufficient to aver generally the truth of the alleged defamatory matter. If the charge is made in general terms, the particular facts relied upon as constituting the charge must be set forth specifically. This must be done by the pleader in order that the court may see whether the defendant was justified in speaking the words complained of, and in order that the plaintiff may know precisely what he has to meet and be prepared for it." Dowie v. Priddle, 216 Ill. 553, 75 N. E. 243; 3 Am. & Eng. Ann. Cas. and editor's not, 526; Frye v. Bennett, 5 Sandf. (N. Y.) 54; Warner v. Clark, and note, 21 L. R. A. 507 (45 La. Ann. 863, 13 South. 203); Mull v. McNight, 67 Ind. 535; Deever ·v. Clark, 47 Kan. 745; Sweeney v. Baker, 13 W. Va. 158, 31 Am. Rep. 757; Torry v. Field, 10 Vt. 353; Billings v. Waller, 28 How. Prac. 97; Snyder v. Andrews, 6 Barb. 43. In the latter case the Supreme Court of New York in its opinion says: "The plea in justification must be framed with the same degree of certainty and precision as are required in an indictment for the crime imputed."

In Billings v. Waller, supra, the court held that: "The

Code has not changed the rule which requires certainty and particularity in stating the offense charged against a plaintiff in a plea of justification, in an action of slander or libel. The plea or answer must state specifically the offense of which the plaintiff is alleged to have been guilty giving time, place and circumstances." It will be observed that the article alleged as libelous in the complaint made the general charge that the plaintiff had entered into a combination to kill competition of the lumber business in Webster, and that he was one largely responsible for the lumber trust. The charge is therefore general in its nature, and does not contain a statement of specific facts from which an inference of a combination could be drawn. The answer in this case to be good therefor as against a general demurrer must state facts and circumstances which if proven, would warrant the legal conclusion that the plaintiff did enter into such a combination. While it is true that all forms of pleading heretofore existing are abolished, still the requirements of pleadings as they formerly existed must be substantially observed, and the necessary facts constituting a defense must be stated in order that the plaintiff may be fully apprised of the nature of the defense and be prepared to meet the same at the trial.

This brings us to a consideration of the second contention of appellant that by reason of the facts stated the alleged libelous communication was privileged and comes within the rule laid down by this court in the cases of Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233; Boucher v. Clark Publishing Co., 14 S. D. 72, 84 N. W. 237; Ross v.Ward, 14 S. D. 240, 85 N. W. 182, 86 Am. St. Rep. 746. But in our opinion those cases are not applicable to the case at bar. In those cases this court held that the publication as to the conduct of certain persons who were candidates for office was justified on the ground that the public had a right to know the character of such candidates before being called upon to cast their votes at the election, but in the case at bar the respondent occupied no public position, and was not, so far as the record discloses, a candidate for any public office. He was a private citizen pursuing the business of a private citizen in the city of Webster, and his private business

affairs were not a matter in which the public had any special interest, and this case clearly is ruled by the decision in the case of Rood v. Dutcher et al., 2? S. D. 701, 120 N. W. 772.

The allegation in the answer that an investigation was had, and that the defendant, from reading the testimony of a witness in that investigation, and from his own knowledge of facts, considered himself justified in making the statements in regard to the plaintiff, did not constitute the alleged libelous article a privileged communication. While the publisher of a newspaper may publish a fair and impartial report of judicial proceedings had in a court, mere private investigations by officers or the public authorities confers no more right upon the publisher of a newspaper than upon private individuals. In 25 Cyc. 406, the rule is thus stated: "A full, fair, and impartial report of a judicial proceeding is qualifiedly privileged, unless the court has itself prohibited the publication or the subject-matter of the trial or proceeding be unfit for publication. And no action will lie therefor except on proof of malice in making it. This privilege has been extended to writers of law books referring to reported cases faithfully and fairly, although failure to use reasonable care and diligence in order to be correct destroys the privilege." On page 407 it is stated: "A distinction has been drawn between reports of what takes place in open court and that which is done out of court by one party alone, and it is held that the publication of the contents of a petition or of other pleadings or papers filed in civil proceedings before trials or before any action has taken place on such pleadings or papers by the court is not privileged." It seems to be generally held that publishers of newspapers have no greater privileges to comment upon the conduct of private citizens than has a private individual. In 18 Am. & Eng. Ency. of Law, 1051, the law is stated as follows: "It is well settled that in the absence of statute newspapers as such have no peculiar privilege, but are liable for what they publish in the same manner as the rest of the community, and this whether the publication is in the form of an item of news, an advertisement, or corresponence. This rule is not inconsistent with the 'liberty of the press,' as this right is recognized in England and guaranteed

by both the federal and state Constitutions in the United States. The 'liberty of the press,' as the law now stands is only a more extensive and improved use of the liberty of speech which prevailed before printing became general, and is the right belonging to every one, whether the conductor of a newspaper or not, to publish whatever he pleases without the license, interference, or control of the government, the publisher being responsible only for the abuse of the privilege.". The law as thus stated seems to be supported by a very large number of authorities cited by the learned author of the article on Libel and Slander. The allegations, therefore, in the answer clearly fail to show any facts constituting a privileged communication, and the answer, so far as it attempts to plead a privileged communication, is clearly insufficient.

This brings us to the third and last contention of appellant which is that assuming that the answer is insufficient in stating facts justifying the charge made in the alleged libelous article, and that it is not a privileged communication, yet that facts sufficient to constitute a defense to the action in mitigation of damages are alleged. We are inclined to take the view that the appellant is right in this contention. Section 2292 of our Civil Code provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to actual damages, may give damages for the sake of example, and by way of punishing the defendant." This section is a verbatim copy of section 1839 of the proposed Code for the state of New York, and the Code commissioners in their note to this section say: "In this the commissioners have taken the rule as now settled in this state by the Court of Appeals in Hunt v. Bennett, 19 N. Y. 173." Jonson v. Jenkins, 24 N. Y. 252; Fry v. Bennett, 1 Abb. Prac. 289; Id. 4 Duer (N. Y.) 247; Brown v. Chadsey, 39 Barb. 253, 259; Sharon v. Mosher, 17 Barb. 518.

It was held by the learned Court of Appeals of New York in Hunt v. Bennett, supra, that : "The law presumes it (the publication) to be false, and where, as in this case, it is unambig-

uous and not capable of being understood in any other sense than as defamatory to an extent that must necessarily expose the plaintiff to contempt and ridicule, it is by implication of law malicious." And it was further held in that case that: "In libel, slander and other actions of similar character, the law allows exemplary or punitive damages;" and that case as to exemplary damages was approved by that court in Johnson v. Jenkins, supra. As exemplary or punitive damages allowed by the jury are frequently much greater than the amount of actual damages it is important to a defendant that he be permitted to show facts in mitigation of such damages or facts that will relieve him from liability to a verdict for such exemplary damages. While therefore a party to an action for libel charging the plaintiff with the commission of a crime which he fails to justify, is subject to actual damages, circumstances may be shown in mitigation, which will constitute a partial defense by exempting him from a verdict for exemplary damages in addition to actual damages. In the case at bar it will be observed, the defendant in his answer alleges that the publication was without malice. And defendant further states that he did not make the publication maliciously or with the intention or for the purpose of injuring or harming the plaintiff, but for the purpose of discharging what he believed to be his duty to the public. He further alleges that an investigation was had in which witnesses were examined, and among them one W. F. Ebert whose testimony, the defendant, prior to the publication of said articles he had heard and read, and the knowledge of said testimony together with other knowledge he possessed caused and prompted him to publish said articles. If the appellant on the trial is able to prove these allegations and that the publication was not made maliciously or with intent to injure the plaintiff, but was made, as he claims, from a sense of duty to his subscribers, and that he honestly believed that the plaintiff was guilty of the offense charged, the jury would hardly be justified in finding a verdict in favor of the plaintiff for more than actual damages, although they believe from the evidence that the charge is false. It is quite clear therefore that sufficient facts are stated to constitute mitigating cir-

cumstances that might, if proven, prevent a verdict by the jury for exemplary or punitive damages. While it is charged that the libel was malicious, and, if untrue, it was presumptively malicious, still it was competent for the defendant under his denials and allegations to show that he was not actuated by malice, but that the publication was made in good faith and without any intended wrong to the plaintiff. The demurrer, therefore, is too broad, including as it does, not only a failure to state facts sufficient to constitute a justification, or facts showing it to be a privileged communication, but also mitigating circumstances which would tend to reduce or prevent the recovery of exemplary damages, and the demurrer should therefore have been overruled.

For the error of the court in sustaining the demurrer in its present form, including all the defenses set up in the answer, the order of the circuit court sustaining the demurrer is reversed.

WHITING, P .J. While concurring fully with Justice CORSON that the order of the circuit court sustaining the demurrer to the answer must be reversed for the reasons stated in the foregoing opinion, I am unable to fully agree with him in what he says concerning the plea in justification. The answer as interposed was divided into several paragraphs, the second paragraph therof clearly being the paragraph wherein the pleader intended to and did set forth those matters which he desired to plead in justification, which said paragraph is quoted in full in the foregoing opinion, commencing with the words "Defendant specifically denies" where the same appears immediately following the words "of said paper" and closing with the words "should be sold at retail in Webster and vicinity." Justice CORSON says: "The answer in this case to be good therefore as against a general demurrer must state facts and circumstances which, if proven, would warrant the legal conclusion that the plaintiff did enter into such a combination." As I understand the views of my associate, as stated in the words above quoted, it is that the defendant in his answer should have made a statement of the facts, or acts of the parties which would go to show that an

unlawful combination was entered into. It would seem to me that this would be but pleading the evidence and that all that could be required of the defendant in his answer, wherein he is charged with accusing the plaintiff of entering into an unlawful combination in restraint of trade, is that he state with reasonable clearness the nature and purpose of the alleged unlawful combination, the time and place thereof, the criminal intent on the part of said plaintiff in entering into such combination, together with the name or names of the other party or parties to such combination. A reading of the second paragraph of said answer, it seems to me, shows clearly that the defendant has set forth each and every one of the above requisites to a good plea in justification, save and except that he has failed to state who was the other party or parties to the said unlawful combination.

McCOY, J., taking no part in the decision.

SMITH, J.   I concur in the foregoing opinion of Justice WHITING.