### BOUCHER v. CLARK PUBLISHING COMPANY.

1. Laws 1891, Chap. 58, §§ 1, 7, provide that it shall be unlawful for any person to give, offer, or promise to procure any office or employment to any voter for voting or refraining from voting, making such acts an infamous crime, and punishable by imprisonment, forfeiture of the office to which he was elected at such election, and loss of suffrage for five years. *Held*, that a complaint for libel, alleging that defendant had published an article charging plaintiff, as a candidate for sheriff, with promising to place men on the jury, for voting for him, and to help elect certain persons to the same office at the next election if they would support him, states a cause of action.

2. The action of the court in striking out parts of defendant's amended answer will not be reviewed where defendant afterwards filed a second amended answer, since by so doing defendant waived all error in the rulings of the court thereon.

3. Where in an action for libel for charging plaintiff, as a candidate for sheriff, with having promised to place men on the jury, for their votes, and to support certain persons for the office at a future election, for their votes, plaintiff had testified to no fact not admitted by the pleadings, it was not error to sustain his objection to questions on cross-examination touching such promises to voters, since such cross-examination was not as to a matter presented by his direct examination.

4. In an action for libel, where defendant's manager had testified, as a witness for plaintiff, that defendant's paper had 800 circulation, he could be asked if it had 800 subscribers.

5. The manager could not be asked on cross-examination as to whether at the time of the publication of the alleged libel he had any prejudice or feeling against plaintiff, such question having no reference to anything touched on in his direct examination.

6. In an action for libel for publishing an article charging plaintiff, as a candidate for sheriff, with having promised to place men on the jury, for their votes, and to help elect certain others to the office at a future election, in return for their votes and support, it was error to refuse defendant's motion to direct a verdict for it, where plaintiff had not proven actual malice or want of probable cause, since such publication was privileged, under Comp. Laws, § 2530, providing that a privileged communication is one made without malice by one standing in such relation to the person interested as to afford a reasonable ground for supposing the motive to be innocent.

7. Instructions that defendant could not justify without establishing the truth of the charges were erroneous, since defendant could not be held liable if it had reason to believe, and did believe, that the charges were true, and they were published, without malice, for the information of voters.

(Opinion filed November 21, 1900.)

Appeal from circuit court, Clark county.  HON. JULIAN BENNETT, Judge.

Action by Josiah Boucher against the Clark Publishing Company for libel.  From a judgment for plaintiff, defendant appeals.  Reversed.

*S. H. Elrod, William McGann* and *C. G. Sherwood,* for appellants.

The printed article in question was not libelous *per se* and as no special damages were alleged, or from appellant's objection to the introduction of any evidence under the complaint and its motion to direct a verdict should have been sanctioned. 13 Am. and Eng. Ency. of law, 435, 436; Pollard v. Lynn, 91 U. S. 308; Cooley on Torts. 196; Black's Law Dict. 618.

The conduct of public servants and all matters that touch the public welfare are privileged. Adamson v. Raymer, 68 N. W. 1,000; Klinch v. Colby, 46 N. Y. 427; Wilson v. Fitch, 41 Cal. 363; Hunt v. Bennett, 19 N. Y. 173; 13 Am. & Eng. Ency. of Law, 329, 420; Hamilton v. Eno, 81 N. Y. 37; Houston v. Love, 39 Mo. 495; State v. Balch, 31 Kan. 465; Mott v. Dawson, 46 Ia. 533; Bags v. Hunt, 60 Ia. 251; State v. Burham, 31 Am. Dec. 217; Briggs v. Garrett, 56 Am. Rep. 274; Landers v. Campbell, 79 Mo. 433; Commonwealth v. Clapp, 4 Mass. 168; O'Rouke v. Lewiston Daily Sun Pub. Co., 89 Mo. 310.

The trial court erred in denying the motion of appellant made at the close of the taking of testimony for the direction of a verdict because there was no evidence of any motive.

*S. A. Keenan, F. G. Bohri* and *F. E. Strawder,* for respondents.

The printed article in question, charging, as it does, the respondent with the commission of an infamous crime, is libelous *per se.* § 7 Chap. 58 Laws, 1891; Geary v. Bennett, 10 N. W. 602; Heilman v. Shanklin, 60 Ind. 424; Edwards v. San Jose Print. & Pub. Co., 34 Pac. 128; Belo v. Fuller, 84 Tex. 450; Harris v. Zanour, 28 Pac. 845; Wheaton v. Beecher, 33 N. W. 503; Hamilton v. Eno, 81 N. Y. 37; Upton v. Hume, 33 Pac. 810.

Not having alleged in this answer that the article in question was true, appellant was precluded from offering any testimony in justification. Thrall v. Smiley, 9 Cal. 520; Merk v. Gelzhoenser, 50 Cal. 631; Lick v. Owen, 47 Cal. 258.

Evidence offered in justification in an action of libel must show the truth of the statement. Newell on Def. Slander and Libel, § 132, 13 Enc. Plead and Prac. 480; Murray v. Raabe, 27 Pac. 157.

HANEY, J. It is alleged in the complaint that on October 6, 1898, defendant published of and concerning the plaintiff, who was the sheriff of Clark county, and a candidate for re-election, the following false, scandalous, and defamatory matters: "It is known that Sheriff Boucher is staking his hope of re-election upon obtaining votes through promises of putting men on the jury at the December term of court and afterwards. It is stated upon reliable authority that within the last few days he has approached several republicans, and offered to put them on the jury at the December term of court if they would vote for him. Last week he approached a prominent republican in this county, and offered, if he would vote for him and help elect him this fall, Mr. Boucher and his friends would assist in electing this republican two years from now as sheriff of this county. It is also generally understood that Mr. Boucher obtained delegates in some of the townships by pledging men he placed on juries and in other positions at the last term of court to attend the caucuses in their townships and vote for delegates who would work for him for sheriff. Mr. Boucher has always been profuse with this class of promises, and he may be able to fool some people with them this year, but he has promised twenty persons where he can perform with but one."

In discussing the issues involved in this action, it should be con-

stantly borne in mind that the right of protection from defamation in this state is subordinate to the following fundamental principles: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right. In all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense. The jury shall have the right to determine the fact and the law under the direction of the court." Const. Art. 6, § 5.

Defendant's objection to the introduction of any evidence, on the ground that the complaint does not state facts sufficient to constitute a cause of action, was overruled. Respondent concedes that, as no special damage is pleaded, the complaint is fatally defective, unless the language employed by defendant is libelous *per se.* Assuming, as counsel seemed to, that the statutes of this state relating to slander and libel prescribe no rules for determining what language is in itself actionable, resort will be had to the common law in deciding whether actual injury should be presumed in this case. There is abundant authority for the following statement: " Any publication which imputes to a person the commission of a criminal offense, which will, in case the imputation or charge is true, subject the party charged to punishment for a crime involving moral turpitude, or subject such party to an infamous punishment, is actionable in itself, when published orally, and hence, when expressed otherwise than by oral language, is a libel." Newell Defam. 67. While language not embraced in the foregoing might be libelous *per se,* it is confidently believed that any publication which falls clearly within the terms of this definition should be regarded as *prima facie* actionable. An act to preserve the purity of the ballot, and to punish crimes committed against the elective franchise, passed in 1891, contains the following:

"Section 1. It shall be unlawful for any person, directly or indi-

rectly, by himself or through any other person:  *  *  *  Second. To give, offer or promise any office, place or employment, or to promise to procure or endeavor to procure any office, place or employment to or for any voter, or to or for any other person, in order to induce such voter to vote or refrain from voting at such election, from [for] any particular person or persons."

"Sec. 7.  Whoever shall violate any of the provisions of this act shall, upon conviction thereof, be punished by imprisonment in the county jail for not less than three (3) months nor more than one (1) year.  The offenses described in Sections one (1) and two (2) of this act are hereby declared to be infamous crimes.  When a person is convicted of any offense mentioned in sections one (1) and two (2) of this act, he shall in addition to the punishment above described, forfeit any office to which he may have been elected at the election with reference to which such offense was committed, and shall in addition be excluded from the right of suffrage for a period of five (5) years after such conviction, and it shall be the duty of the county auditor or county clerk of the county in which such conviction shall be had to transmit a certified copy of the record of conviction to the auditor or clerk of each county in this state within ten (10) days thereafter, which said certfied copy shall be duly filed by the said county auditor or clerk in their respective offices."  Laws 1891, Chap. 58 §§ 1, 7.

Without considering whether the legislative declaration as to the character of the crimes defined in this statute is conclusive upon the courts, or the power of the legislature to impose the punishments prescribed therein, we have no hesitancy in holding that the offense defined in the second paragraph of the first section is one involving moral turpitude.  "Everything done contrary to justice, honesty, modesty, or good morals is said to be done with turpitude."

2 Bouv. Law Dict. 752. In one sense it is morally wrong to violate any rule of conduct prescribed by the sovereign power, but we understand the true test of moral turpitude in this connection to be whether the forbidden acts would be regarded as contrary to good morals in the absence of any statute on the subject. Certainly it is not morally right to purchase votes with money, and in principle there is no difference between purchasing votes with money, and purchasing them with promises of place or employment. We think the foregoing statute defines a crime involving moral turpitude, and that the language published concerning the plaintiff charges him with the commission of such crime. Therefore the complaint states a cause of action.

Before the trial began the court, on motion of the plaintiff, struck out certain paragraphs of defendant's first amended answer as sham, irrelevant, and redundant, to which ruling the defendant duly excepted, whereupon, by order of the court, defendant filed its last amended answer. It is contended that the court erred in striking out these portions of defendant's first amended answer. The question is not before us, for the reason that after the motion had been allowed by the court the defendant filed an amended answer. This was a waiver of all questions touching the former answer, and of the rulings of the court in relation thereto. Hexter v. Schneider, 14 Or. 185, 12 Pac. 668; Gale v. James, 11 Colo. 540, 19 Pac. 446; Gale v. Foss, 47 Mo. 276; Wells v. Applegate, 12 Or. 208, 6 Pac. 770; Kentfield v. Hayes, 57 Cal. 409.

The court having overruled defendant's objection to the introduction of any evidence, the plaintiff testified that he resided at Clark, and was sheriff of Clark county, and the person designated as "Sheriff Boucher" in the article referred to in his complaint. Thereupon defendant admitted that the plaintiff was the duly elected, qual-

ified, and acting sheriff of Clark county; that when the article was published he was a candidate for re-election; and that the defendant is incorporated as alleged in the complaint. Then the following questions were asked the plaintiff on cross-examination, to which he objected, and the objection was sustained: "Q. Mr. Boucher, did you have a conversation with Mr. Ben Kelley, at Clark, September 20, 1898, in which you said to him, in substance: 'I will tell you what I will do: If you will help me out in election, I will help you out at the next term of court. You know two dollars a day is pretty good.' Q. Did you have a conversation with James Dunlap, at Clark, in this county, about the 1st of September, 1898, in which you said to him that if he would induce Theodore Thoreson and William Olverson not to run for sheriff in the November election, 1898, in said county, and assist to elect you sheriff at the November election of 1898, then you and your friends would assist, after the fall of 1898, to elect any of the Thoreson crowd for sheriff of Clark county?" F. S. Pruyn, called as a witness on behalf of plaintiff, testified on direct examination as follows: "I am manager of the Clark Pilot Review. I am acquainted with the property that corporation owns. I can't tell you the exact circulation of the Pilot Review at this time. It is in the neighborhood of 800. Q. When you say '800' you mean that you send the paper out to 800 subscribers? (Objected to by the defendant's counsel as irrelevant and immaterial. Objection overruled.) A. Yes, sir." And on cross-examination he was asked the following question, to which the plaintiff objected, and the objection was sustained: "At the time of the publication of this article, Mr. Pruyn, did you have any prejudice or feeling or malice against Mr. Boucher, the plaintiff?" Thereupon the plaintiff rested, and defendant moved the court to direct a verdict in favor of the defendant, for the reason that the plaintiff had failed to make out a

cause of action. The motion was denied. Defendant contends there was error in excluding the questions propounded to the plaintiff and Pruyn on cross-examination, and in denying defendant's motion to direct a verdict. It is urged that the cross-examination of the plaintiff was proper for the purpose of impeachment. This view cannot be sustained. The witness had testified to no fact not admitted by the pleading. Every word of his evidence was wholly immaterial. It is elementary that a witness is not impeached by contradicting an immaterial statement. Again, the alleged declarations out of court to which his attention was called were not in any respect inconsistent with any testimony given upon the trial. In view of the issues presented by the pleadings and his testimony in chief, any cross- examination of the plaintiff was improper at the time the questions under discussion were propounded. The only fact testified to by Pruyn which was not established by the pleadings was the circulation of defendant's newspaper. The extent to which the defamatory matter had been circulated was clearly competent and material. The witness had, without objection, previously stated that the circulation was in the neighborhood of 800. therefore there was no error in allowing him to answer the above question as to the number of subscribers. The attempted cross-examination of this witness was clearly improper. It is the settled rule in this country that the cross-examination must relate to facts and circumstances connected with the matters stated in the direct examination. If a party wishes to examine a witness as to other matters, he must do so by making the witness his own. Jones,Ev. § 820. Any testimony the witness might have given concerning his feelings towards the plaintiff could not have explained or contradicted his statement relative to the circulation of defendant's newspaper.

Should defendant's motion to direct a verdict have been sus-

tained? The evidence received when defendant rested established but one fact not admitted by the pleadings, namely, that defendant's circulation was in the neighborhood of 800. The number of subscribers was material, as affecting the amount of damages, but not essential to plaintiff's cause of action, because the publication of the libelous article was admitted in the answer. Hence the question arises, upon whom rested the burden of proof under the issues presented by the pleadings? These facts are thereby established: That when the article was published by the defendant the plaintiff was sheriff, and the regular nominee of the people's party for re-election to the same office. Plaintiff alleges that the statements contained in the article are false. Defendant denies this, and alleges certain facts in justification of its publication. There is a direct issue as to the truth of the publication, and the affirmative allegations of the answer are to be deemed controverted. Comp. Laws, § 4933. We do not understand that a person is deprived of the presumption of innocence by becoming a candidate for public office. If the publication in this case be the truth, the plaintiff is guilty of a criminal offense. Every one accused of crime is presumed to be innocent until the contrary is proved. Comp. Laws, § 7376. Then in the absence of evidence to the contrary it should be assumed that the publication is false. Hence we have a candidate for a county office falsely charged with having committed a criminal offense by a newspaper published and circulating in the county where he resides and is seeking an election. The language being in itself actionable, a malicious intent in publishing it is an inference of law, and therefore needs no proof, unless the circumstances attending the publication repel such inference. Where the publication is privileged there can be no recovery, without proof of actual malice. So far as applicable to this case, the statute thus defines a privileged

communication: It is one made, without malice, to a person interested therein, by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent. Comp. Laws, § 2530. Electors of Clark county were interested in the official conduct of the plaintiff, and especially interested in the means being employed by him to secure his re-election. The communication was made to persons interested therein. It was defendant's right and duty, as publisher of a newspaper in that county, to inform the electors of the campaign methods employed by the plaintiff; and if it honestly believed, after a fair and reasonable investigation, that such methods were improper or criminal, it was justified in exposing them, provided it did so without malice, and for the sole purpose of disseminating truthful information among the people of Clark county. For the purpose of defendant's motion to direct a verdict, the charges made against the plaintiff must be regarded as false. Should it be inferred that they were published without malice, in good faith, and upon probable cause, merely because the plaintiff was a candidate and they relate to the methods of his campaign? Upon this question the decisions are not harmonious. This court recently had occasion to examine the subject of privileged communications, and reached the conclusion that where, under the pleadings, an alleged libelous publication is presumptively privileged, the burden of proving express malice is upon the plaintiff. Myers v. Longstaff, 14 S. D. —, 84 N. W. 233. In the case at bar, as the facts stood when defendant's motion to direct a verdict was made, it clearly appeared that the publication was privileged, and there was no evidence of actual malice or want of probable cause. Therefore the court erred in not granting defendant's motion.

In ruling on the introduction of evidence and in charging the jury, the court below took the position that the defendant could not justify without establishing the truth of the charges made against the plaintiff.    We think this view was erroneous.    If defendant had reason to believe, and did believe, that the charges were true, and they were published without malice, for the purpose of enabling voters to cast their ballots more intelligently, he should not be held liable in this action.    As heretofore stated, the publication being confined to statements relating to the campaign methods of a candidate for a public office, addressed to electors interested in his election, it was privileged, and presumptively made upon probable cause and without actual malice.    Candidates for public office should be subject to honest criticism, especially concerning their methods of obtaining votes.    Public policy demands this.    But they should not be recklessly accused of criminal offenses.    Every person should be compensated for intentional injury.    If, however, a newspaper, in the exercise of due care, while performing the duties which it owes to the interested public, makes a mistake, it should not be compelled to respond in damages.    Though decisions may be found which are less favorable to the defendant in cases of this character, we think the views herein announced are supported by the greater weight of authority, and that they are in harmony with the principle that "every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."    It is certainly not an abuse of the right to freely publish on the subject of a candidate's fitness for public office for a newspaper to give its readers, who are interested in the candidate's election, such information as it may acquire in good faith, by the exercise of reasonable care, concerning the means being employed by such candiate to procure votes, although the publisher may

be unable, when sued for damages, to establish the truth of what is published, provided he can establish the fact that he acted without actual malice, and for the sole purpose of enlightening the electors. All the questions likely to arise upon a retrial have been considered. The judgment of the circuit court is reversed, and a new trial ordered.