## ROSS v WARD.

1. Under Comp. Laws, § 2529, declaring· slander to be a false and unprivileged publication; and Section 2530, declaring a privileged communication to be one, without malice, to a person interested therein, by one who is also interested—where, in slander, the plea was that the statement of defendant that plaintiff was a thief was made at a time when plaintiff was a candidate for the office of alderman, and defendant and those to whom the statement was made were electors and taxpayers, it was error to charge that the only defense to a false statement to the effect that another had committed a crime would be proof of the truth of the charges made, and to disregard the theory of privileged communication.

2. Under Comp. Laws, §§ 2529, 2530, where, in slander, the plea was that the statement of defendant that plaintiff was a thief was privileged, in that at the time it was made plaintiff was a candidate for the office of alderman, and that defendant and those to whom the statements were made were electors and taxpayers, and at the time the statements wore made plaintiff believed them to be true, it was error to charge that by the pleading it was admitted that the charge was made, and that it must be taken to have been false, and that plaintiff was entitled to a verdict for some amount, since the instruction omitted the question of privilege.

3. The instruction was erroneous, in that it assumed that defendant had admitted the falsity of the statement.

4. Const. Art. 6, § 5, declares that in all trials for libel the jury shall have the right to determine the facts and the law under the direction of the court. *Held*, that where, in an action for slander, the plea was that the statement was privileged, it was error for the court to assume to decide that the communication was not privileged; its duty being merely to direct the jury by stating to them what constitutes a privileged communication.

5. Under Comp. Laws, §§ 2529, 2530, if a defendant in slander, with proper motives and without malice, stated to certain electors and taxpayers of a city, he himself being one of the electors and taxpayers, that plaintiff was an unfit person to be elected an alderman, for the rea-

son that he had taken the cattle of defendant, and defendant honestly believed, and had reason to believe, that defendant had stolen his cattle he was justified in making the statement.

(Opinion filed February 12, 1901.)

Appeal from circuit court, Beadle county. Hon. A. W. Campbell, Judge.

Action for slander by Van L. Ross against John Ward. From a judgment in favor of plaintiff, defendant appeals. Reversed.

*John Wood* and *A. W. Burtt,* for appellant.

*H. C. Hinckley,* for respondent.

Corson, J. This is an action for slander. Verdict and judgment for the plaintiff, and the defendant appeals. It is averred in the complaint that on the 1st day of April, 1899, the following defamatory words were spoken by the defendant of and concerning the plaintiff, "Van Ross is a thief." In his second count it is averred that on the 24th day of April the defendant again used substantially the same language of and concerning the plaintiff, and that this was repeated on the 25th day if April. The defendant in his answer does not attempt to justify by averring that the statements made by him were true, but he does aver in his answer that in making the statements in the plaintiff's complaint mentioned the defendant believed them to be true at the time he made them, and he gives in detail the circumstances under which two head of cattle were lost by him in October, 1898, and the grounds upon which he based his belief that the plaintiff had stolen them. The defendant, as his third defense, alleged that the plaintiff was a candidate for the office of alderman for the First ward of the city of Huron, at the city election to be held in April, 1899, and was competing with other candidates for said office; that the contest therefor became exciting, and the electors became interested in said election; that in a conversation with one

David Smith, who was an elector and taxpayer of said First ward, on or about April 1, 1899, a short time before said election, the defendant, in discussing the merits and fitness for the office of alderman of the plaintiff and the other candidates, made the statement set forth in the complaint, in the interest and for the benefit of the taxpayers of the city of Huron and the community at large, and that the language was used by defendant in a private conversation with said Smith and one J. S. Burke, electors and taxpayers of said city, in which the defendant is an elector, property holder, and taxpayer, and interested in the election of aldermen and other officers of said city. As a fourth defense, the defendant avers that the statements made by him on or about April 24th, in regard to the plaintiff, were called out by the questions and conduct of the plaintiff himself. The defendant further avers that whatever he said of and concerning the plaintiff was said in the full belief of its truth and verity, and was said to parties interested as to the plaintiff's qualifications and fitness for office, and the defendant denies each and every allegation contained in said complaint not specifically admitted.

It will thus be seen that the defendant admits the statements alleged in the complaint to have been made by him on the 1st of April, 1899, and on the 24th of the same month; that he pleads the fact and circumstances attending the loss of his cattle in mitigation of damages; that he avers as a defense that the statements made by him on the 1st day of April were made of and concerning the plaintiff while he was a candidate for the office of alderman of the city of Huron, and to parties who were taxpayers and electors of said city, and interested with himself in the officers to be elected at the then ensuing election, to be held on the 6th day of the same month; that the statements made of and concerning the plaintiff on the 24th day of April were made in the heat of passion, and in refutation of the

abusive language used to him by the plaintiff; and that he further avers that whatever he said of and concerning the plaintiff was said in the full belief of its truth and verity, and not from any motive of malice towards the plaintiff; and that all the allegations of the complaint not speciffically admitted are denied. Numerous errors are assigned by the appellant, but, in the view we take of the case, it will only be necessary to discuss those relating to the charge of the court to which the defendant excepted.

The court in its charge to the jury used the following language: "Thus you will see that, while considerable latitude is allowed in discussing the fitness of a candidate for office, yet the law is that voters and newspaper publishers are not at liberty to attack the private character of the individual, and falsely accuse him of having committed a crime against the laws of the state, and, if he does so, the only defense he will have is by proof of the truth of the charges he makes. Thus you will see, gentlemen, the plea of privilege falls to the ground. It is not sufficiently broad to constitute a defense." It will be observed that in this portion of the charge the court took the whole question of privilege from the jury, and held as matter of law that an elector is not at liberty to attack the private character of an individual, and falsely accuse him of having committed a crime against the laws ofthe state, though he make the charge in good faith, believing it to be true, and under circumstances making it privileged. In taking this view of the law, the court was clearly in error. The Civil Code of this state provides: "Slander is a false and unprivileged publication, other than libel, which (1) charges any person with crime, or with having been indicted, convicted or punished for crime." * * * Section 2529, Comp. Laws. It will be observed that the communication must be "false and unprivileged." The clear inference from this section is that a communication, though

it charges a person with crime, may yet be privileged, and not consti-
tute slander. The learned circuit court evidently overlooked this sec-
tion of our Code, and followed the decisions of certain courts which
hold that, if a person is charged with a crime, it is not privileged;
but under our code the law is otherwise, and a person may be charged
with a crime, and, if the communication is privileged, he may not be
liable in damages therefor. The Code also provides that "a privi-
leged communication is one made * * * (3) in a communica-
tion, without malice, to a person interested therein, by one who is
also interested." * * * Section 2530, Id. It will be noticed that
in this definition no exception is made as to the communication charg-
ing a crime, the only condition being that the communication be with-
out malice, and made to a person interested therein by one who is
also interested. The charge of the court, therefore, that an elector
is not at liberty to accuse a party of having committed a crime
against the laws of the state under any circumstances, unless
he can justify by proving the truth of the charge, has no warrant un-
der our code. This was the view taken by this court in the recent
case of Boucher v. Publishing Co., 14 S. D. ——, 84 N. W. 237.
The learned circuit court in that case used substantially the same
language as that used by the court in the case at bar, and for the er-
ror in the instruction the judgment was reversed, and a new trial
granted. Myers v. Longstaff, 14 S. D. ——, 84 N. W. 233.

In the very recent case of McCarty v. Lambley, 46 N. Y.,
Supp. 792, the supreme court of New York uses the following lan-
guage: "Privileged communications have been defined by a text
writer to comprehend all statements made bona fide in the perform-
ance of a duty, or with a fair and reasonable purpose of protecting
the interest of the person making them, or the interest of the
person to whom they are made. A communication made bona

fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter, which, without the privilege, would be slanderous and actionable." Townsh, Sland. and L, § 209. The rule as thus stated has been frequently recognized and adopted by the courts of this state. Keane v. Sprague, 30 Alb. Law J. 283; Klinck v. Colby, 46 N. Y., 427; Byam v. Collins, 111 N. Y. 143, 19 N. E. 75, 2 L. R. A. 129; Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, 20 L. R. A. 440; Pendleton v. Hawkins, 11 App. Div. 602, 42 N. Y. Supp, 626. * * * When, therefore, we speak of them as 'privileged', we simply mean that the circumstances in which they are used rebut the inference which would otherwise arise from their utterance; or, in other words, that, when their privileged character is established as a matter of law, the burden is cast upon the plaintiff of establishing, as a matter of fact, the existence of expres malice." The court in that case concludes: "We incline to the opinion, therefore, that the parties' relation towards each other was legally such as to bring any communications or statements made by either within the same rule to which we have already adverted (Billings v. Fairbanks, 136 Mass. 177) ; or, to state the matter more concisely, that the statements made to Mara were privileged, to the extent of requiring proof of express malice, in order to render them actionable." In the case of Fresh v. Cutter, 73 Md. 87, 20 Atl. 744, 10 L. R. A. 67, which was an action for slander in which the defendant charged the plaintiff with having stolen $200 from him, it was said: "Malice is the foundation of the action, and in ordinary cases is implied from the slander; but there may be justification from the occasion, and, when this appears, an exception to the general rule arises, and the words must be proved to be

malicious as well as false. Beeler v. Jackson, 64 Md. 593, 2 Atl. 916. This justification from the occasion arises, in the class of cases now being considered, when a communication is 'made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty,' if made to a party having a corresponding interest or duty,' although the communication contained criminating matter which, without this privilege, would be slanderous and actionable." In the case at bar, for the error committed by the court in the part of the instruction quoted,the judgment must be reversed. But, as the questions arising upon the other portions of the charge may arise on another trial, we have deemed it proper to consider them in this opinion.

The court also charged the jury as follows: "Now, gentlemen, from all I have said in this case regarding the question of this definition that a slander is a false and unprivileged publication, other than libel, which charges any person with crime, or with having been indicted, convicted, or punished with crime, you will see that by the pleadings in this case it is admitted that this charge was made on at least two occasions, charging this plaintiff with being a thief. It is admitted by the pleadings and must be taken that this charge is false, and it necessarily follows that this plaintiff is entitled to a verdict for some amount, and the only question the jury will have to determine is the amount of damages that the plaintiff is entitled to recover in this case." The learned judge was clearly in error in giving this instruction. It will be noticed that the instruction entirely omits the question of privilege, and it asumes, in effect, that the defendant had admitted that the charge was false, and that he knew that it was false at the time it was made. This is not the correct construction of the pleading. The defendant denies all the allegations of the complaint not expressly admitted in the answer, and

he nowhere has admitted in his answer that the charge made by him was false, or that he knew it was false at the time it was made. The court, therefore, stated the effect of the answer too strongly to the jury, and in ignoring the question of privilege was clearly in error. In Fresh v. Cutter, *supra,* the supreme court of Maryland held a similar instruction to be erroneous because it omitted all reference to the question of privilege. The court in that case said: It directed the jury to find for the plaintiff if they believed the defendant spoke the words in the presence and hearing of other persons than the plaintiff. Under this instruction the jury were required to return a verdict against the defendant, even though they were satisfied that the words were spoken to Allen alone, in good faith, without malice, in the full belief of their truth, and under the honest conviction that Fresh was only discharging a social duty to his neighbor in making the communication. This entirely ignored the question of privilege, which was the only defense relied on by the appellant." It is true in this case that the court had assumed to decide that the communications made either on April 1st, the 24th, or the 25th, were not privileged, but in this view we think the court was in error. Section 5, art. 6 of aur state constitution is as follows: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right. In all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense. The jury shall have the right to determine the facts and the law, under the direction of the court." The fact that the jury shall have the right to determine the fact and the law under the direction of the court seems to have been overlooked by the learned circuit court. The court, it is true, may direct the jury by stating to them what constitutes a privileged communication as laid down in the law, but whether or not the communication is priv-

ileged is a matter to be determined by the jury. This provision of the South Dakota constitntion is self-executing. To the lawyer familiar with the early decisions of the English courts upon the subject of libel and slander, the importance of this provision will be apparent. In our view of the case, therefore, the court had no right to take from the jury the question of whether or not the communication in this case was privileged.

Again, the court charges the jury: "The damages in this case which the plaintiff should recover may be anywhere from one dollar up to five thousand dollars, but in no case should exceed five thousand dollars, because that is the amount alleged. The plaintiff must of necessity, as I have said, recover some damages—at least nominal damages. These damages I have been speaking to you of are termed 'actual' or 'compensatory' damages, and are such damages as, in the judgment of the jury, will compensate the injured party for the injury he has sustained." It will be seen that in this instruction the court entirely ignores the question of privileged communication, and instructs the jury that they must find for the plaintiff in some amount, leaving only the amount of damages for the jury to find. This, as we have seen, was clearly error. It clearly appears from the evidence in this case that when the first alleged defamatory words were uttered, on the first of April, the plaintiff was a candidate for the office of alderman, and the defendant and the parties to whom the statements were made were taxpayers and electors of the city of Huron, who necessarily had an interest in the election of aldermen in that city. If the defendant, therefore, in good faith, with proper motives and without malice, stated to the persons named that the plaintiff was an unfit person to be elected as alderman, for the reason that he had taken the cattle of the defendant, and the defendant honestly believed, and had reason to believe, that his cattle had been

stolen by the plaintiff, he was fully justified in making those state-
ments at that time to the persons named.    Myers v. Longstaff, *supra,*
Boucher v. Publishing Co., *supra.*

The repetition of these statements on the 24th of April, and after
the election had been held, presents a question of more difficulty.
It would seem from the evidence, however, in the case, that it tended
very strongly to show that the statements made by the defendant on
the 24th of April were called out by inquiries made by the plaintiff.
But we do not deem it necessary at this time to decide the question
as to whether or not the defendant has furnished any legal excuse for
the statements made by him on that occasion and on the following
day, assuming that the statements were made on the 25th, as stated
by the witness.    The judgment of the circuit court and order de-
nying a new trial are reversed, and a new trial granted.