## ROOD v. DUTCHER et al.

Whether an alleged libelous newspaper article falsely reflecting on the professional skill or conduct of a physician is privileged depends on the relation of the physician as such to the public, not on his peculiar methods of soliciting business; and the fact that he had advertised his skill and solicited patrons through the newspapers is immaterial.

A charge that the jury should consider the physicians newspaper advertisements in determining whether the alleged libelous article was privileged was reversible error, notwithstanding the constitutional right of the jury in libel trials to determine the law as well as the facts under the direction of the court; there being nothing to refute the presumption that they accepted the charge as a correct statement of law, and were thereby induced to render a verdict different from what they would have returned had the law been correctly stated.

Rev. Civ. Code, § 31, defining a privileged communication as one made without malice to a person interested therein by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, while it embraces newspaper articles relating to the official conduct of public officers and candidates for public office in which all the public are interested, does not embrace newspaper articles relating to the professional conduct of a physician, since only such persons as desire to employ him are interested in such communications, and no person owes any duty to give such information unless requested to do so by some one desiring to employ him.

Where the court was requested to charge that the application of the term "quack" or "impostor" to a medical practitioner duly graduated from a reputable medical college and duly licensed to practice medicine and surgery cannot be justified by proof of specific acts of malpractice or unskilled practice on his part, but only by proof that he was not a lawfully graduated or licensed physician or surgeon, but only a false pretender to be such, it was reversible error to charge as a compliance with the request that the application of the term "quack" or "impostor" to a medical practitioner duly graduated from a reputable medical college and duly licensed to engage in the practice of medicine and surgery cannot be justified by proof of specific acts of malpractice or of unskillful practice upon his part, and, if any such evidence has been given in the action, it is wholly immaterial, and should be wholly disregarded, notwithstanding the charge given may

have correctly stated the law, since the language used was substantially different from that requested.

(Opinion filed, April 6, 1909.)

Appeal from Circuit Court, Brookings County.   Hon. J. H. McCoy, Judge.

Libel action by O. W. Rood against Paul Dutcher and others. From a judgment for defendants and an order denying a new trial, plaintiff appeals.   Reversed.

*Alexander & Hooker,* for appellant.

The defense of privileged communication, in actions of libel, is a new matter and must be specially pleaded.   Bliss on Code Pleading, Sec. 361.   In regard to the justification that the publication was privileged, the code has made no change.   The facts that will thus shield the defendant are, as they always were, new matter to be pleaded.   13 Enc. Pleading & Practice 88, Sec. 4; Fresh v. Cutter, 73 Mr. 87; Quinn v. Scott, 22 Minn. 456; Gorden v. Kieler, 51 Barb. 455; Wachter v. Quinzer, 29 N. Y. 547; Hess v. Sparks, 25 Pac. 480 Kan.; Harper v. Harper, 10 Bush (Ky.) 455; Goodwin v. Daniels, 7 Allen 61; Hawkins v. Globe Printing Co., 10 Mo. App. 174; Cummerford v. Ry. Co., 164 Mass. 15.   The plea of privilege should allege that the defendant made the communication on a lawful occasion, believed it to be true and without malice, or at least, bona fide.   13 Enc. Pleading & Practice 84, Sec. 4; O'Donaghue v. McGovern, 23 Wend. 26; Fresh v. Cutter, 73 Md. 87.   The statutory definition of a privileged communication applicable to this case is one "made without malice to a person interested therein by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive of the communication innocent."   Rev. Civ. Code 1903, § 31.   True criticism never imputes or insinuates dishonorable motives unless justice absolutely requires it, and then only on the clearest proof.   Odgers Libel & Slander, 33.   The critic never takes advantage of the occasion to gratify private malice or attain any other object beyond the fair discussion of matters of public interest and judicious guidance of the public taste.   He will carefully examine the production before him and then honestly and fearlessly state his true opinion of it.   Id.   The term quack applied

to a physician, in his professional capacity, is libellous per se and imports malice. Elmergreen v. Horn, 91 N. W. 973 Wis.; 13 Enc. Law, 314 note; Clark v. Freeman, 11 Beav. 112; Odgers on Libel & Slander, 27. Publishers of newspapers have no immunity from liability for publishing a libel other or different from other persons. The charge of the trial court, in dwelling upon the rights and duties of newspaper publishers, in connection with the definition of privilege also contained in said charge, and which definition is broader than the statutory definition above quoted, was intended to and probably did lead the jury to believe that newspapers have special immunities from liability in libel cases. 13 Enc. Law, 316, § 4; McGuire v. Vaughn, 64 N. W. 47, Mich.; Gray v. Simes, 77 N. W. 204 Minn.; Cooley on Torts, 219; Usher v. Lawrence, 20 Me. 9.

*Hall & Roddle,* and *Cheever & Cheever,* for respondents.

A privileged communication is one made in good faith upon any subject matter in which the party communicating has an interest in reference to which he has, or honestly believes he has, a duty, to a person having a corresponding interest or duty and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable. Newell on Libel & Slander, pp. 388, 389. The defendants honestly believing after careful investigation that the statements contained in the Estelline Tribune in the article in question, which they copied verbatim therefrom, were not only justified, but that they owed the duty to their readers of publishing it. While this duty was not perhaps, strictly speaking, a legal one, it was nevertheless of a moral or social character of imperfect obligation, which was sufficient to establish the privileged nature of the occasion. Newell on Libel & Slander, 389; 18 Ency. of Law, 2d Ed. 1029. It is not necessary, however, that a communication, to be privileged, should be given in answer to an inquiry. The rule has been broadly stated that where a person is so situated that it becomes right in the interest of society that he should tell to a third person certain facts, information given bona fide and without malice is privileged. 18 Ency. of Law, 2d Ed. 1032; Subd. 3, Sec. 30, Rev. Civ. Code. At common law the truth of the charge will be a sufficient justification apart from any question of good faith or want of malice on the part of the defendant,

and independently of the time when the knowledge of the truth came to the defendant. 18 Ency. of Law, 2d Ed. 1068; Cox v. Strickland, 101 Ga. 482.

HANEY, P. J. So far as material to the questions demanding attention on this appeal, the pleadings are to this effect: Plaintiff alleged that he was a licensed physician and surgeon residing in the city of Brookings, Brookings county, extensively engaged in the practice of his profession in the counties of Brookings, Hamlin, and Kingsbury, his practice being especially directed to diseases of the eye and ear; that defendants were the proprietors, editors, and publishers of a weekly newspaper, published at the city of Brookings, and that they maliciously, with intent to injure the plaintiff, published of and concerning him in such newspaper the following false and defamatory article: "Gilbert Lovre has been troubled considerably for some time with a cataract on one of his eyes and when Dr. O. W. Rood, the noted (?) Eye Specialist, who resides at Brookings, was here last month, Gilbert consulted him regarding it. After an examination, the learned doctor pronounced the trouble to be insignificant and assured the boy that it could be removed by a very simple operation. Gilbert went to Brookings a week or two ago and the operation was performed. The rest is sad to tell. The operation in itself might have been simple, but this wise and skillful man made a horrible botch of it and in consequence his victim now lies suffering intense pain and it is feared that the eye will have to be taken out. It would seem as though there ought to be some protection for the unsuspecting public against such quacks and impostors.—Estelline Tribune." Defendants admit the publication, but deny that it was done maliciously or with intent to injure the plaintiff. They allege that the article was copied verbatim from a reputable newspaper published in Hamlin county, that it was reprinted as a matter of news merely; and that defendants had no reason to believe but what all of the matters contained therein were in all respects true, and that they had reason to believe, and did believe, that all the statements contained in the article were true. They also allege that all the statements contained in the article were true; that at the time of such publication plaintiff's reputation for skill as a physician and surgeon and as a

specialist in diseases of the eye and ear was not good and known to defendants to be not good; "that the plaintiff in many other instances and cases caused serious damage and injury to patients by reason of his unskillful treatment of them, and does not possess the amount of skill which should be possessed by a person who advertised himself as a specialist and expert in the treatment of al' diseases of the eye and ear, and that the plaintiff has imposed on numerous patients and upon the public generally by claiming that he is an able and efficient expert in the treatment of diseases of the eye and ear, when, in fact, he is not an expert or skillful in the treatment of the eye and ear," and they deny that plaintiff was injured by the publication in any respect whatever. A verdict having been returned in favor of the defendants, the plaintiff appealed from the judgment entered thereon, and from the order denying his application for a new trial.

The theory upon which the cause was tried and submitted to the jury is indicated by the following excerpt from the charge of the learned circuit judge, to which the plaintiff duly excepted: "The court further instructs the jury that if you believe from the evidence in this case that the plaintiff at and prior to July 27, 1899, advertised the fact that he was a graduate of a medical college and that he possessed skill in the matter of treatment and operations upon the human eye, and that he operated in Brookings, S. D., a hospital equipped with modern conveniences and appliances, wherein diseases of the eye might be successfully treated and thereby invited public attention and thereby appealed to the public for patronage, and that the defendants in this case did not originate said article, but reproduced the same for the sole purpose of warning the people of the community against the professions and advertisements of the plaintiff, published the article in question as a matter of news only, in an honest belief that the statements therein contained were true, then this would constitute a complete defense, and the plaintiff in this action could not recover because the publication would then be a privileged publication." Whatever may be the ethical rules regarding advertising generally recognized by the medical profession, no legal distinction applicable to the issues in this case should be drawn between different methods of represent-

ing oneself to be a competent physician. Whether or not a news-paper article falsely reflecting on the professional skill or conduct of a person engaged in the practice of medicine is privileged de-pends on the relation of the physician, as such, to the public, not on his peculiar methods of soliciting business. An incompetent physician who merely publishes his professional card in the local papers may do more harm than one who causes full-page adver-tisements of his alleged skill to be published in papers of state-wide circulation. If the public should be protected from one, it should from the other. It appeared from the pleadings and plain-tiff's own testimony that he was engaged in the practice of medicine as an eye and ear specialist, thereby holding himself out to the world as one qualified to treat diseases of those organs, and the fact that he had advertised his business in newspapers in Sioux Falls or elsewhere was wholly immaterial. It was therefore error to allow the introduction of such advertisements, and to charge the jury that they should be considered in determining whether or not the article was privileged; and, as to the charge, the error was re-versible notwithstanding the constitutional right of the jury in trials for libel to determine the law as well as the facts under the direction of the court Ross v. Ward, 14 S. D. 240, 85 N. W. 182, for the reason that there is nothing to refute the presumption that the jury accepted the charge as a correct statement of the law, and were thereby induced to render a verdict different from what they would have returned had the law been correctly stated by the court.

However, the more important question is whether newspaper articles concerning the professional conduct of a practicing phy-sician should be regarded as privileged communications merely be-cause of the relation of the physician as such to the general public in the territory to which his practice extends. So far as applicable to this question, a privileged communication is defined by our civil Code to be one "made, without malice, to a person interested there-in, by one who is also interested, or by one who stands in such re-lation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent." Rev. Civ. Code, § 31. This court has held that this definition embraces news-paper articles relating to the official conduct of public officers and

candidates for public office. Boucher v. Publishing Co., 14 S. D. 72, 84 N. W. 237; Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233; Ross v. Ward, supra. Does it also embrace newspaper articles relating to the professional conduct of physicians? We think not. The relation of a public officer to the public is substantially different from that of the physician. All are or may be affected by the official conduct of the former, and therefore are interested in any communication in relation thereto, while only such persons as desire to employ the latter are interested in communications relating to his professional conduct. Hence neither the proprietor of a newspaper nor any other person owes any duty to give information concerning the same unless requested to do so by someone desiring to employ the physician. Indeed, no reason exists for extending the presumption of innocent motive to false statements regarding a physician which would not apply with equal force to a minister of the Gospel, an attorney at law, a banker, merchant, or other person whose vocation involves voluntary transactions with people generally in the community in which such person resides. Therefore the article involved in the case at bar should not have been regarded as a privileged communication, and the circuit court's instructions on the subject clearly were erroneous.

The court was requested by the plaintiff to give the following instructions: "The court hereby instructs the jury that the application of the term 'quack' or 'impostor' to a medical practitioner duly graduated from a reputable medical college and duly licensed to engage in the practice of medicine and surgery cannot be justified by the proof of any specific acts of malpractice or unskillful practice on his part, but such epithets could only be justified by proof that such practitioner or purported practitioner was not a lawfully graduated or licensed physician or surgeon and was only a false pretender to be such." It was read by the court to the jury as an instruction requested by the plaintiff in the following form: "The court hereby instructs the jury that the application of the term 'quack' or 'impostor' to a medical practitioner, duly graduated from a reputable medical college, and duly licensed to engage in the practice of medicine and surgery, cannot be justified by proof of specific acts of malpractice or of unskillful practice upon

the part of said practitioner, and, if any such evidence has been given in this action, the same is wholly immaterial, and should be wholly disregarded by you." It is reversible error for a trial judge in this state to read an instruction, as an instruction requested by one of the parties, in language substantially different from that requested. Peart v. Railway Co., 8 S. D. 431, 66 N. W. 814; Id., 8 S. D. 634, 67 N. W. 837. Clearly the language of the instruction as read was substantially different from that requested, and revers-. ible error was committed in this respect notwithstanding the modified instruction may have stated the law correctly. The judgment and order appealed from are reversed.

SMITH and McCOY, JJ., not sitting.