## SCHULL v. HOPKINS.

A handbill circulated respecting a candidate for renomination as state's attorney, stating that the signers had made an attempt to see such candidate as a matter of courtesy, knowing that his con nection with the gambling element was such that they could not expect him to prosecute them; that such candidate remained behind a locked door after an appointment to see them; that, when the gambling houses were raided, they did not let him know of it until the gamblers were in the sheriff's hands because they were fraid that the raid would be useless if he were notified; that his prosecution of the cases was made under the threat that a failure to do so would constitute ground for proceedings to remove him; and that the signers felt that his record unfitted him in every way for the office of state's attorney—was a privileged communication, and not libelous unless malicious.

Malice in the case of a privileged communication is never inferred or presumed from the falsity of the charge alone.

The actual malice required to support a recovery in an action for libel published of a candidate for renomination for public office cannot be inferred from the expression by defendant of a desire to defeat such candidate.

A candidate for public office invites consideration of his qualifications and fitness, and those interested may freely discuss his past official record without being liable for libel, where such persons act without actual malice, though as a matter of fact they are mistaken as to the truth of assertions made.

In an action for alleged libel published of a candidate for renomination, it was error to instruct that the fact that defendant had pleaded the truth of the alleged libel, and then failed to establish such defense, might be considered in estimating damages, as it was evidence tending to show continued malice; since in such class of

cases malice is not to be inferred from the falsity of the charge published.

(Opinion filed, June 18, 1910.)

Appeal from Circuit Court, Codington County. Hon. GEORGE H. MARQUIS, Judge.

Action by Charles Schull against Hollis L. Hopkins. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

*Sherin & Sherin* and *Loucks & Mather,* for appellant. *Wilbur S. Glass,* for respondent

McCOY, J. It appears from the record: That the respondent, Charles Schull, plaintiff in the circuit court, was on the 4th day of June, 1908, the duly elected, qualified, and acting state's attorney for Codington county, and that at that time he was a candidate for renomination and election at the then approaching primary election to be held on June 9, 1908. That the appellant, Hollis L. Hopkins, defendant in the lower court, was a resident and elector of said county, and that he was instrumental and concerned in publishing and circulating among the voters of said county the following printed handbill or circular:

"The Ministers Take a Fall Out of Charles Schull.

"The following address is being sent out by letter mail this week by the ministers, to every voter in Codington county outside this city:

" 'Watertown, S. Dak., June 4, 1908.
" 'To the Voters of Codington County:

" 'Gentlemen: Since Charles Schull is giving a false interpretation to certain statements which we, the undersigned, endorsed, in our desire to be more than fair, to one with whom we are forced to differ radically, and since he has published the statement that—"there is no real issue at all between himself and the ministers," we feel called upon to give a definite statement regarding the matter. Had it not been for the use of the word "repeatedly" in the statement made in the Watertown Times of May 21st regarding our attempt to see Mr. Schull, no further word from us on the matter would have been necessary.

" 'The attempt to see Mr. Schull was made as a matter of courtesy, to give him a chance if he would use it, *knowing that his connection with the gambling element of this city was such that we could not expect him to prosecute them.* When he remained behind a locked door, as he now admits, after we had made an appointment over the telephone to see him just the hour we called, we felt that further attempts would be useless. When the gambling houses were raided we did not let Mr. Schull know of it until the gamblers and their property were in the hands of the sheriff *because we were afraid, judging by the attitude he had taken toward gambling up to that time,* three months ago, that the raid would be useless if he were notified. His prosecution of the cases was made with the *threat hanging over him* that a failure to do so would constitute the ground for *proceedings to remove him* from office. We feel that his record, personally and officially, *unfit him in every way for the high and responsible office of state's attorney.*

" 'We are not working in the interest of any faction or party but in the interest of *law enforcement,* by a man of *character* and *ability,* when we urge *all* who cast a ballot at the Republican primaries June 9th, who favor the suppression of open gambling, to lay aside *all factional prejudice* and cast a vote for Perry F. Loucks, *who has pledged himself to do that work if elected.*

" 'We have every reason to believe that our attitude in this matter is shared by all the ministers of this city.

" 'If any doubt this, or about the genuineness of this statement in general, we will consider it a favor if you will see us personally or make use of the telephone.

" 'Rol L. Palmerton, Phone-Green 557,

" 'Pastor First Baptist Church.

" 'John P. Clyde, Phone-Red 144,

" 'Pastor First Congregational Church.' "

Respondent thereafter instituted this suit to recover damages against appellant, alleging in his complaint that said publication, and the charge therein contained, was wholly false and without foundation in fact and was known to be so by appellant; that the

same was published by appellant with express malice against respondent, intending thereby to injure him in his office and occupation as attorney. Appellant denied generally the allegations of said complaint, and also alleged that said publication was in fact true in substance and in fact, and that the said matter contained in the said publication was of public interest to the people of said community, and that the same was a privileged communication because of the candidacy of respondent for the office of state's attorney. The trial resulted in a verdict and judgment in favor of respondent. Motion for new trial being overruled, appellant has brought the cause before this court on appeal, assigning among other things the insufficiency of the evidence to sustain the verdict, in this: that there is no evidence to show that appellant had any actual malice against or towards respondent at the time of said publication. In this contention we are of the opinion that appellant is right. The publication in question is not libelous per se. It does not charge respondent with the commission of any criminal act. Upon its face and by its purport, it appears to be a privileged publication, and could only become libelous where the publication was shown to be made with actual malice. The burden was on respondent to show by competent evidence that appellant acted with actual malice. Malice under such circumstances is never inferred or presumed from the falsity of the charge alone. The publication being privileged, the presumption of good faith prevails until overcome by evidence showing actual malice.

The proposition here involved has heretofore been clearly and well considered by this court in some very similar cases. In the case of Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233, the trial court instructed the jury as follows: "The law provides that a privileged communication, so far as it relates to this case, is one made in a communication, without malice, to a person or persons interested therein, by one who is also interested, or by one who stands in such relations to the persons interested as to afford a reasonable ground for supposing the motive for the communication innocent. The defendant claims that, the plaintiff being at the time a candidate for office at the hands of the voters of the

community, and he (the defendant) being a resident of the city of Huron, he was interested in the result, and that the residents of the city, to whom the publications were addressed and who read the paper published by him, were also interested in like manner; that he was not actuated or inspired by malice in publishing the articles referred to; and that they are therefore priviledged under the rules which I have given you, and were therefore not libelous. And generally, upon the question of privileged communications, I charge you that the law is that the fitness and qualifications of a candidate for an elective office may be a subject of the freest scrutiny and investigation, either by the proprietor of a newspaper or by a voter or person having an interest in the matter, and that much latitude must be allowed in the publication for the information of voters of charges affecting the fitness of a candidate for the place he seeks so long as it is done honestly and without malice. Nor will such a publication be actionable without proof of express malice, although it may be harsh, unjust, and unnecessarily severe, for these are matters of opinion, of which the party making the publication has a right to judge for himself. In the case of such a publication the occasion rebuts the inference of malice which the law would otherwise raise from the falsity, and no right of action exists, even though the character of the party has suffered, unless he is able to show the existence of actual malice. You will, however, understand that this privilege accorded to a newspaper publisher or any other person cannot avail any one as a defense who may seek under cover of it to maliciously attack or traduce the character of any person by publishing of such person false and libelous articles concerning himself. If a publication attacks the private character of a candidate for office by falsely imputing to him a crime in some respect, not specially going to the question of his fitness for the office to which he aspires, it is not priviledged by the occasion, either absolutely or qualifiedly, is actionable per se, and the law implies malice; and it is no justification that the publication was made with honest belief in its truth, in good faith, and for the purpose of influencing voters. Such publications can only be justified by proof of their truth." This instruction was wholly sustained and approved by

this court. In rendering decision in that case, Justice Corson quoted with approval the following: "A communication to be privileged must be made upon proper occasion, from a proper motive, and must be based upon reasonable and probable cause. When so made in good faith, the law does not imply malice from the communication itself as in the ordinary case of libel. Actual malice must be proved before there can be a recovery. And whether communication be privileged or not is a question for the court and not for the jury. That the description of cases, recognized as privileged, must be understood as exceptions to the general rule. The rule of evidence as to such cases is accordingly so far changed as to impose it upon the plaintiff to remove the presumptions flowing from the seeming obligation and situations of the parties, and to require him to bring home to the defendant the existence of malice as the true motive of his conduct." And Justice Corson, in rendering such decision, also used this pertinent language: "In the case at bar the occasion was a proper one, and the publication a privileged one, and in such case, as we have seen, the law does not imply malice, but actual malice must be proved before there can be a recovery. The court, therefore, was clearly right in his instructions to the jury." The same principles are held in Boucher v. Clark Publishing Co., 14 S. D. 72, 84 N. W. 237, and in Ross v. Ward, 14 S. D. 240, 85 N. W. 182, 86 Am. St. Rep. 746. Now, in this case at bar, the evidence shows that defendant, the appellant, expressed a desire to defeat respondent for renomination. This is the only possible evidence in this case outside of the publication itself which might tend to show a malicious motive on the part of appellant, but we are of the opinion that no such inference can reasonably be drawn therefrom. The appellant, as an American citizen and voter, had the right to oppose the renomination of respondent, and, so far as shown by the record, his desire to defeat the renomination of respondent must be presumed to have been based on the matter stated in said publication. While respondent, in a manner, denied any connection with the gambling element in his county, or that he was dilatory in prosecuting gambling offenses, or that he had taken an attitude in opposition to such proceedings, still it conclusively ap-

pears from the evidence, and from the cross-examination of respondent, that there was much probable cause for a reasonable person to honestly and in good faith so conclude. It conclusively appears that respondent had been seen about such places; it conclusively appears that complaint had been made to him and prosecutions requested; it conclusively appears that prosecutions were not started by him on such complaints; and it conclusively appears that what prosecutions were started were instituted by other attorneys; it conclusively appears that when a committee, interested in such prosecutions, telephoned to respondent that they were coming to see him that they found, on arrival at his office a few minutes later, the door locked and were unable to gain admittance; it conclusively appears that respondent was in his office at that time. These circumstances, while not conclusive evidence of the truth of the matters stated in the publication complained of, were sufficient to show probable cause for honestly so believing, and sufficient to overcome any influence of bad faith that might otherwise arise from the surrounding circumstances of the case, so far as disclosed by the record. In the case at bar the evidence not only fails to show actual malice, but, on the contrary, the undisputed evidence tends to show probable cause, such as would justify a reasonable person in honestly entertaining the belief that said article was true. A mistake in such belief or judgment under such circumstances cannot be the subject of libel. One who is a candidate for an office at the hands of the people invites consideration of his qualifications and fitness for such office, and, in such consideration thereof those interested may freely discuss the past official record of such candidate in order to ascertain whether they desire to oppose or support him without being liable to prosecution for libel, where such persons act without actual malice, and in good faith, although, as a matter of fact, they may be mistaken as to the truth of assertions made under such circumstances; the exception to this rule being that one under guise and cover of this privilege will not be permitted in bad faith to maliciously attack or traduce the character of a candidate for office by publishing of and concerning him false and libelous articles. There is nothing in the evidence of this case which has a

tendency to show that appellant was using this privileged communication other than in good faith. Notwithstanding respondent denied and attempted to explain away the circumstances in connection with the matters stated in said article, there still remained, undisputed, the facts which constitute probable cause. If appellant in this case had at the close of all the testimony moved for a directed verdict and assigned the overruling thereof as error as was done in Boucher v. Clark Publishing Co., supra, then almost precisely the same situation would exist in this case as in that. The appellant in the case at bar has accomplished the same result by another route in moving for a new trial on the ground of insufficiency of the evidence.

Among other things, the jury was instructed as follows: "The defendant has pleaded the truth. When the defendant in such case as this pleads the truth and alleges in his answer that the article, the publication of which he complains of, is true, and a material part of that justification fails, the plea fails altogether, and the fact that he has pleaded so stated in his answer that the article was true, and then fails to establish its truth, may be taken into consideration by the jury in estimating damages, if, having found all the issues in plaintiff's favor, they have passed to the question of damages, as it is evidence in such case, tending to show malice, and continued malice." To which instruction appellant excepted and now assigns as error. We are of the opinion that this instruction was erroneous and embodied law not applicable to this class of cases and was prejudicial and misleading. If the principles laid down in the instructions given in Myers v. Longstaff, supra, are correct, then this instruction must necessarily be error. There it is held that malice should not be inferred from the falsity of the charge in this class of cases. In this class of cases the defendant may not be guilty, although the publication is ever so false, providing he honestly and in good faith believes (under circumstances warranting such belief) the article to be true, although he was as a matter of fact mistaken. It is the bad faith of the defendant coupled with the falsity of the article that constitutes the gist of plaintiff's cause of action, and, although an article may be shown to be false, in order to entitle plaintiff to recover, he

must further prove, outside of and beyond the article itself, the actual malice and bad faith of defendant, and which in this case is wholly wanting.

For the reasons stated the judgment of the circuit court is reversed and a new trial ordered.

HANEY, J. I concur in the conclusion that the judgment should be reversed on the ground of error in the charge to the jury.

WHITING, P. J. I concur in the view of HANEY, J., as above set forth.